UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
A.A. MEDICAL P.C.,                                                          :   Case No.:2:22-cv-01249 (ENV)(LGD)
                                  Plaintiff,                 :
    -against-                                                                     :
                                                                          :
IRON WORKERS LOCALS 40, 361 & 417                    :
HEALTH FUND,                                                                    :
                            Defendant.              :
------------------------------------------------------------------------X

# MEMORANDUM OF LAW IN SUPPORT OF
# MOTION FOR SUMMARY JUDGMENT

                                                            **COLLERAN, O'HARA & MILLS L.L.P.**
                                                            **Attorneys for Defendant**
                                                             **100 Crossways Park Drive West, Suite 200**
                                                             **Woodbury, New York 11797**
                                                             **(516) 248-5757**
                                                             tpk@cohmlaw.com

**Of Counsel**
   **Thomas P. Keane, Esq.**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ..............................................................................................1

PROCEDURAL HISTORY.......................................................................................................1

STATEMENT OF RELEVANT FACTS .................................................................................2

    A.    The Fund ......................................................................................................................2

    B.    A.A. Medical, P.C. ......................................................................................................3

    C.    Plaintiff's Claim for Medical Services ........................................................................4

LEGAL ARGUMENT...............................................................................................................5

    I.    STANDARD FOR A FRCP 56 MOTION FOR SUMMARY JUDGMENT ...............5

    II.    PLAINTIFF FAILS TO STATE A CLAIM UNDER ERISA.......................................6

        A.    ERISA 502(A)(1)(b) – Failure to Abide by the Terms of the Plan .........................6

            1.    The Arbitrary and Capricious Standard of Review Applies. ............................7

            2.    The Plan Administrator's Interpretation of the Relevant Plan Provision was at the very least rational, and so cannot be deemed arbitrary or capricious. ........................................................................................................9

        B.    The Fund's Exercise of Discretion With Respect to Medical Necessity Was Neither Arbitrary Nor Capricious. ..........................................................................10

CONCLUSION.......................................................................................................................11

## TABLE OF AUTHORITIES

Page(s)

**Cases**

Accardi v. Control Data Corp.,
   836 F.2d 126 (2d Cir. 1987) ........................................................................................... 9

Adickes v. S.H. Kress & Co.,
   398 U.S. 144 (1970) ....................................................................................................... 6

Anderson v. Liberty Lobby, Inc.,
   477 U.S. 242 (1986) .................................................................................................... 5, 6

Castro v. 32BJ Union,
   800 F.Supp. 2d 586 (S.D.N.Y. 2011) ............................................................................ 6

Celotex Corp. v. Catrett,
   477 U.S. 317 (1986) ....................................................................................................... 5

Donahue v. Windsor Locks Bd. of Fire Comm'rs,
   834 F.2d 54 (2d Cir.1987) ............................................................................................. 5

Fay v. Oxford Health Plan,
   287 F.3d 96 (2d Cir. 2002) .......................................................................................... 11

Fay v. Teamsters Local Union No. 553,
   67 F. Supp. 2d 86 (E.D.N.Y. 1999) ........................................................................... 5, 6

Hobson v. Metro. Life Ins. Co.,
   574 F.3d 75 (2d Cir. 2009) ......................................................................................... 7, 8

Juliano v. HMO of N.J., Inc.,
   221 F.3d 279 (2d Cir. 2000) .......................................................................................... 7

Kulak v. City of N.Y.,
   88 F.3d 63 (2d Cir.1996) ............................................................................................... 6

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
   475 U.S. 574 (1986) ....................................................................................................... 6

Metro. Life Ins. Co. v. Glenn,
   554 U.S. 105 (2008) ....................................................................................................... 7

Miller v. United Welfare Fund,
   72 F.3d 1066 (2d Cir. 1995) ........................................................................................ 10


Morris v. Local 819, Int'l Bhd. of Teamsters,
    954 F. Supp. 573 (E.D.N.Y. 1997) .................................................................................. 6

Ocampo v. Bldg. Serv. 32B-J Pension Fund,
    787 F.3d 683 (2d Cir. 2015) ............................................................................................ 8

Pagan v. NYNEX Pension Plan,
    52 F.3d 438 (2d. Cir. 1995) ........................................................................................... 10

Pulvers v. First UNUM Life Ins. Co.,
    210 F.3d 89 (2d Cir. 2000) .............................................................................................. 9

Roganti v. Metro. Life Ins. Co.,
    786 F.3d 201, (2d Cir. 2015) ................................................................................... 6, 7, 8

S.M. v. Oxford Health Plans (N.Y.),
    644 F. App'x 81 (2d Cir. 2016) ..................................................................................... 11

Samuels v. Mockry,
    77 F.3d 34 (2d Cir.1996) ................................................................................................. 6

Thurber v. Aetna Life Ins. Co.,
    712 F.3d 654 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 2723 (2014). ............................... 7

United States v. Bari,
    599 F.3d 176 (2d Cir.2010) ............................................................................................. 3

Varney v. Verizon Commc'ns, Inc.,
    560 F. App'x 98 (2d Cir. 2014) ....................................................................................... 9

Vox Amplification Ltd. v. Meussdorffer,
    No. 13-4922, 2014 WL 558866, at *8 (E.D.N.Y. Feb. 11, 2014) ................................... 3

Zeuner v. Suntrust Bank Inc.,
    181 F. Supp. 3d 214 (S.D.N.Y. 2016) ............................................................................. 9

**Statutes**

29 U.S.C. §§ 1002(2) and (37) .............................................................................................. 2

29 U.S.C. § 1132(a)(1)(B) ........................................................................................... 2, 6, 10

**Rules**

Fed.R.Civ.P. 56(c) ................................................................................................................. 5

**Regulations**

29 C.F.R. § 2509.75-8 ........................................................................................................... 2

## PRELIMINARY STATEMENT

Defendant Iron Workers Locals 40, 361 and 417 Health Fund ("Defendant" or the "Fund") respectfully submits this memorandum of law in support of the Fund's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure ("FRCP") 56 seeking dismissal of the Amended Complaint. Plaintiff A.A. Medical P.C. ("Plaintiff") is an out-of-network medical provider who supplied orthopedic services on June 16, 2021 to a non-party patient who is a participant in the Fund. Plaintiff received an assignment of benefits from the participant and filed the within action to recover the full amount claimed for its services from the Fund.

The allegation relates to the nonpayment of benefits by Defendant. As discussed in detail herein, Plaintiff has not and cannot establish that the Fund erred by denying full payment of the amounts billed. Nor can Plaintiff establish that the decision finding an unapproved procedure was not medically necessary was arbitrary and capricious. Summary judgment in favor of Defendant and dismissing the action is warranted.

## PROCEDURAL HISTORY

Plaintiff filed the Complaint in the United States District Court for the Eastern District of New York on March 8, 2022. Defendant was served with the Complaint on April 14, 2022. The parties stipulated to extend Defendant's time to respond to the Complaint on April 4, 2022. The stipulation was so ordered by the Court on May 5, 2022. Defendant timely sought leave to file a motion to dismiss on May 19, 2022. The motion to dismiss was fully briefed on August 11, 2022. On January 18, 2023, the Court issued an order granting the motion to dismiss without prejudice and with leave to amend the complaint. Plaintiff filed an Amended Complaint on January 24, 2023. Defendant filed an Answer to the Amended Complaint on February 17, 2023.

## STATEMENT OF RELEVANT FACTS

**A. The Fund**

The Fund is a self-insured, self-funded multi-employer benefit plan within the meaning of Section 3(2) and 3(37) of ERISA. 29 U.S.C. §§ 1002(2) and (37). (Sabbagh Decl. at ¶ 2). The participants in the Fund are members of Iron Workers Locals 40, 361, or 417 (the "Unions"). (Sabbagh Decl. at ¶ 3). The Fund is administered by a Board of Trustees who are the fiduciaries of the Fund, with half of the Trustees appointed by the Unions and half appointed by contributing employers. (See Sabbagh Decl., Ex. A, Trust Agreement at p. 4). The Restated Trust Agreement effective February 1, 1976 (the "Trust Agreement"), which governs the Fund, states that the Board of Trustees is given the "exclusive power" to determine what benefits the Fund provides. (Sabbagh Decl., Ex. A, Trust Agreement at p. 7). The Trust Agreement also permits the Trustees to "delegate any of their ministerial or administrative powers or duties to agents, employees, or others…" (Sabbagh Decl., Ex. A, Trust Agreement at p. 9). The application of plan rules to determine eligibility, the calculation of benefits, and the processing of claims are considered "purely ministerial functions" and can be properly delegated. 29 C.F.R. § 2509.75-8. In this case, the Trustees have delegated these responsibilities to the Fund Administrator and Fund employees. (Sabbagh Decl. at ¶ 5).

The Summary Plan Description ("SPD") details all benefits that are provided by the Plan and how these benefits are paid. (Sabbagh Decl. at ¶ 7). The Plan Administrator, Trustees, and any individual who has been delegated the administration of the Plan for the Fund have "discretionary authority to determine…eligibility and entitlement to Plan Benefits in accordance with the terms of the Plan." (Sabbagh Decl. Ex. B, SPD at p. 80). The Plan provides that participants may choose any doctor their choose but can only provide lower costs when a participant chooses providers are "in-network." (Sabbagh Decl., Ex. B, SPD at p. 76).

2

The Plan further provides that "[o]nce the Plan makes payment on a claim, no further payment will be made." (Sabbagh Decl., Ex. B, SPD at p 102). An appeals procedure for participants or their providers to follow is also provided for in the SPD in the event benefits are disputed. The SPD clearly explains its position with regard to out-of-network providers, such as Plaintiff. The SPD states:

> If you use an Out-of-Network provider, the Plan will pay 60% of the Plan's **allowed amount** charges of your Covered Medical Expenses after you have met your deductible. You will be responsible for paying 40% of the charges.
>
> Once you have paid reasonable and customary charges of up to $5,000 in addition to your deductible, the Plan will pay the rest of your covered expenses at 100% of the Plan's Scheduled Allowance charges for the remainder of the calendar year. (Sabbagh Decl., Ex. B, SPD at p. 76).

For out-of-network claims, the Fund's schedule of allowances is compiled by FAIR Health, a third-party vendor and non-profit organization, which collects a database of claims to determine what providers charge and what insurers pay for healthcare, and then further groups the claims by geographic area. (Sabbagh Decl. at ¶ 8).[1] Those charges by geographic area are then organized into percentiles. (Id.). For example, if a provider's price in a certain geographic area is in the 80th percentile for a particular service, that means 80 percent of the fees billed by other providers for the same service were that amount or lower. (Id.).

### B. A.A. Medical, P.C.

Plaintiff is a surgical practice group with a principal place of business in Stony Brook, New York. See Exhibit G to Declaration of Thomas P. Keane ("Keane Decl."), Amended Complaint

---

[1] While averred to in the Declaration of Brian J. Sabbagh, Defendant also respectfully requests that the Court take judicial notice of this publicly available information contained on the Fair Health website available at https://www.fairhealthconsumer.org/#about (last visited October 28, 2020). See Vox Amplification Ltd. v. Meussdorffer, No. 13-4922, 2014 WL 558866, at *8 (E.D.N.Y. Feb. 11, 2014), report and recommendation adopted, 50 F.Supp.3d 355 (E.D.N.Y.2014) ("Furthermore, based upon independent web searches, I take judicial notice that, as I had recalled, there are scores of stringed instruments featuring teardrop bodies ....") (citing United States v. Bari, 599 F.3d 176, 180 (2d Cir.2010) (upholding judicial notice in a criminal case, noting "a judge need only take a few moments to confirm his intuition by conducting a basic Internet search")).

3

"(Am. Compl.")." at ¶ 9. Plaintiff does not have an in-network contract with the Plan. Id. at ¶ 3. On June 16, 2021, Plaintiff's medical professionals performed arthroscopic knee surgery on their patient, a non-party participant in the Fund. Id. at ¶ 12. Plaintiff submitted an invoice in the form of a CMS-1500 form for a total amount of $158,438.64. Id. at ¶ 13. Defendant paid $3,473.22. (Id.). Defendant's Explanation of Benefits ("EOB") stated "that the operative report did not describe any lesion in the knee that would require a microfracture chondroplasty." Id. at ¶ 14.

### C. Plaintiff's Claim for Medical Services

In the instant matter, Plaintiff sought pre-approval for two (2) procedures before treating the patient. (Sabbagh Decl. at ¶ 12). Specifically, Plaintiff sought pre-approval for procedure identified 29883 and procedure 2988. Id. The Fund approved both procedures. Id.

On June 16, 2021, Plaintiff performed one of the pre-approved procedures, identified as 29883. Plaintiff also performed a separate procedure for which it had not sought pre-approval, identified as procedure 29879.

Plaintiff billed the Fund, $99,756.32 and $58,682.32 for procedures 29883 and 29879. The Fund, in making its determination of benefits and coverage for this procedure, reviewed the applicable FAIR Health schedule of allowances for out-of-network coverage. (Sabbagh Decl. at ¶ 8). As the Plan provides for payment of 60% of the scheduled allowance for out-of-network claims, the FAIR Health schedule of allowances shows that Defendant properly followed the Plan in paying Plaintiff based on same. As demonstrated on the FAIR Health schedule of allowances below, under the 60th percentile the rate is $5,668.09 for procedure code 29883. This was the applicable allowances in place as of the date of the claim, and matches the amount paid to Plaintiff. (See Sabbagh Decl., Exs. F, Schedule of Allowances).

4

For procedure 29883, Plaintiff billed the Fund a total of $99,756.32, approximately five (5) times the allowable rate paid at the 100th percentile. For procedure 29879, which was not-preapproved, Plaintiff billed the Fund a total of $58,687.32, which is approximately five and one-half (5.5) times the allowable rate paid at the 100th percentile. (See Sabbagh Decl., Exs. C-D, Claims Report and Forms, Schedule of Allowances).

With respect to the code 29888 procedure, the Fund's independent medical reviewer determined that the procedure was not medically necessary. (Sabbagh Decl. at ¶ 13). Therefore, no payment was made for that procedure. The Fund's SPD defines Medically Necessary Treatment as treatment that are:

- Consistent with the symptoms or diagnosis and treatment of the patient's condition, illness or injury,
- In accordance with standard of good medical practice,
- Not solely for the convenience of the patient, the physician or other provider,
- Not primarily custodial, and
- The most appropriate level of service that can be safely provided to the patient.

(See Ex. B to Sabbagh Decl. SPD at p. 75).

## LEGAL ARGUMENT

### I. STANDARD FOR A FRCP 56 MOTION FOR SUMMARY JUDGMENT

A party may be granted summary judgment only when it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fay v. Teamsters Local Union No. 553, 67 F.Supp. 2d 86, 91 (E.D.N.Y. 1999)(quoting Fed.R.Civ.P. 56(c))(citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 57 (2d Cir.1987)). "The substantive law governing the case will determine those facts that are material…." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The movant is entitled to judgment as a matter of law

5

when the evidence, "viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact." Morris v. Local 819, Int'l Bhd. of Teamsters, 954 F. Supp. 573, 576 (E.D.N.Y. 1997), aff'd, 169 F.3d 782 (2d Cir. 1999)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. at 247–48 ); Samuels v. Mockry, 77 F.3d 34, 35 (2d Cir.1996)). The initial burden "of showing the absence of a genuine issue as to any material fact" is placed on the moving party. Fay v. Teamsters Local Union No. 553, 67 F. Supp. 2d at 91(citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)).

In opposition, the non-moving party must do "more than simply show that there is some metaphysical doubt as to the material facts". Castro v. 32BJ Union, 800 F.Supp. 2d 586, 590–91 (S.D.N.Y. 2011)(quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). "Mere conclusory allegations, speculation or conjecture" are insufficient to defeat a motion for summary judgment. Morris v. Local 819, Int'l Bhd. of Teamsters, 954 F.Supp. 573, 576 (E.D.N.Y. 1997) (citing Kulak v. City of N.Y., 88 F.3d 63, 71 (2d Cir.1996)). While "disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment[,] [f]actual disputes that are irrelevant or unnecessary will not be counted." Castro v. 32BJ Union, 800 F. Supp. 2d 586, 590–91 (S.D.N.Y. 2011)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248).

In the case at bar, there is no issue of fact that Defendant exercised its discretion under the terms of ERISA and the plan documents to deny the claim.

## II. PLAINTIFF FAILS TO STATE A CLAIM UNDER ERISA

### A. ERISA 502(a)(1)(B) – Failure to Abide by the Terms of the Plan

"[A]n ERISA claimant bears the burden of establishing his entitlement to benefits" in accordance with "the specific terms of the plan at issue." Roganti v. Metro. Life Ins. Co., 786 F.3d

6

201 (2d Cir. 2015). See also, e.g., Juliano v. HMO of N.J., Inc., 221 F.3d 279, 287-88 (2d Cir. 2000)(plaintiffs "were required to prove their case; to establish that they were entitled to that benefit pursuant to the terms of the Contract or applicable federal law").

The SPD unambiguously provides the administrator discretion over benefits eligibility where it states:

> The Plan Administrator, and other Plan fiduciaries and individuals to whom responsibility for the administration of the Medical Plan has been delegated, will have discretionary authority to determine the applicability of these exclusions and the other terms of the Plan and to determine eligibility and entitlement to Plan Benefits in accordance with the terms of the Plan. (Sabbagh Decl. at Ex B, SPD at pg. 80).

The SPD goes on to state:

> The Plan will not always pay benefits equal to or based on the physician's actual charge for health care services or supplies, even after you have paid the applicable Deductible. This is because the Plan covers only up to the Plan's Scheduled Allowance for health care services or supplies. (Sabbagh Decl. at Ex. B, SPD at p. 117).

**1. The Arbitrary and Capricious Standard of Review Applies.**

It is well-established that where an ERISA plan grants the administrator "discretionary authority to determine eligibility for benefits," courts apply a "deferential standard of review." Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 111 (2008) (internal quotation marks and emphasis omitted). Under that deferential standard, "the administrator's decisions may be overturned only if they are arbitrary and capricious." Roganti, 786 F.3d 201 (2d Cir. 2015). Accord, e.g., Hobson v. Metro. Life Ins. Co., 574 F.3d 75, 82 (2d Cir. 2009). The Second Circuit does "not require the plan to employ any particular language to reserve discretion"; all that is needed is for the plan's language to "clearly convey" the reservation. Thurber v. Aetna Life Ins. Co., 712 F.3d 654, 658 (2d Cir. 2013), cert. denied, 134 S. Ct. 2723 (2014).

7

The Plan's grant of discretionary authority to the Plan Administrator here could not be clearer. The Plan provides under the Section entitled "Discretionary Authority of the Plan Administrator and its Designees" as follows:

> In carrying out their respective responsibilities under the Plan, the Plan Administrator and other Plan fiduciaries and individuals to whom responsibility for the administration of the Plan has been delegated, will have **discretionary authority to interpret the terms of the Plan and to determine eligibility and entitlement to Plan benefits in accordance with the terms of the Plan**. Any interpretations or determination under such discretionary authority will be given full force and effect and will be accorded judicial deference in any action at court, unless it can be shown that the interpretation or determination was arbitrary or capricious. (Sabbagh Decl. at Ex. B, SPD at p. 127)(emphasis added).

This provision unquestionably confers discretionary authority on the Plan Administrator, mandating arbitrary and capricious review. See, e.g., Hobson, 574 F.3d at 79 (language sufficient where plan provides that administrator "has the 'discretionary authority' to interpret the Plan's terms and determine a claimant's eligibility for, and entitlement to, Plan benefits"); Roganti, 786 F.3d 201 (2d Cir. 2015) (plans "vest interpretive discretion in the plan administrator" where they provide that "[Benefits will be paid under the Plan only if the Administrator, or its delegate, determines in its discretion that the applicant is entitled to them"); Ocampo v. Bldg. Serv. 32B-J Pension Fund, 787 F.3d 683, 690 (2d Cir. 2015)(where plan provided trustees with "the exclusive right, power, and authority, in their sole and absolute discretion, to administer, apply and interpret the Plan," and stated that they "have the sole and absolute discretionary authority to formulate policies necessary to administer the Plan in accordance with its terms" and to "make all decisions with respect to the eligibility for benefits payable under the Plan," the "denial of benefits by the Trustees ... is reviewable only the under the arbitrary-and-capricious standard") (court's ellipses omitted). Because, as discussed in the next section, the Fund's decision here was not arbitrary and capricious, but instead was based on a rational interpretation of the Plan, its decision should be affirmed, and summary judgment should be granted in favor of the Fund.

8

## 2. The Plan Administrator's Interpretation of the Relevant Plan Provision was at the very least rational, and so cannot be deemed arbitrary or capricious.

Under the applicable arbitrary and capricious standard of review, the administrator's interpretation of plan language need only be rational or plausible. "Where both the plan administrator and a spurned claimant offer rational, though conflicting, interpretations of plan provisions, the administrator's interpretation must be allowed to control." Pulvers v. First UNUM Life Ins. Co., 210 F.3d 89, 92-93 (2d Cir. 2000). "The fact that other interpretations may also be plausible does not render the plan administrator's interpretation arbitrary or capricious." Accardi v. Control Data Corp., 836 F.2d 126, 129 (2d Cir. 1987). See also, e.g., Varney v. Verizon Commc'ns, Inc., 560 F. App'x 98, 99 (2d Cir. 2014)(affirming judgment for administrator where its "interpretation of the plan was plausible").

As explained supra, the Defendant in its discretion relied upon the FAIR Health schedule of allowances, incorporated by reference into the Plan, for out-of-network costs and paid Plaintiff the required 60% of that allowance as specified under the Plan. (Sabbagh Decl., Exs. B, F, SPD at p. 76, Schedule of Allowances). There is nothing that has been (or can be) alleged to suggest that the Fund's payment of only part of its participant's costs for out-of-network medical services based on the Scheduled Allowances was without reason. Zeuner v. Suntrust Bank Inc., 181 F. Supp. 3d 214, 221 (S.D.N.Y. 2016). Accordingly, the Fund's payment of the claim in accordance with its schedule of allowances, at the percentage laid out in Plan, was not arbitrary or capricious and should be upheld. Indeed, the Plan language is clear that it "will not always pay benefits equal to or based on the physician's actual charge for health care services or supplies..." (Sabbagh Decl. at Ex. B, SPD at p. 117). Moreover, the Fund's determination of the benefits coverage can hardly be found unreasonable where Plaintiff billed the Fund a total of $158,438.64 for the claim, an amount which is more than approximately five (5) times the allowable rate paid at the 100th percentile.

9

(See Sabbagh Decl., Ex. F, Schedule of Allowances). Thus, Plaintiff has failed to establish a claim under ERISA § 502(a)(1)(B) and summary judgment dismissing the claim is warranted.

### B. The Fund's Exercise of Discretion With Respect to Medical Necessity Was Neither Arbitrary Nor Capricious.

As was noted above, the Fund is afforded discretionary authority to interpret the provisions of the Plan. (Sabbagh Decl. at Ex. B SPD at P. 80; 127). This discretion includes decisions as to whether or not a procedure is medically necessary. Under the arbitrary and capricious standard which applies to the Fund's decision in the case at bar, the court may only find the decision was "arbitrary and capricious if there has been a clear error of judgement, that is, if the decision was without reason, unsupported by substantial evidence or erroneous as a matter of law." Miller v. United Welfare Fund, 72 F.3d 1066, 1072 (2d Cir. 1995); Pagan v. NYNEX Pension Plan, 52 F.3d 438, 442 (2d. Cir. 1995).

The Fund pre-approved the patient for two (2) procedures. (Sabbagh Decl. at ¶ 12.) On June 16, 2021, Plaintiff performed one of those procedures and a different procedure which had not been pre-approved. When Plaintiff submitted its invoice for the June 16th operation, the Fund had Plaintiff's invoice and medical records reviewed by MedReview. The MedReview report found that:

> The operative report describes performing a microfracture chondroplasty representing CPT code 29879. The operative report does not describe any lesion in the knee that would require a microfracture chondroplasty. Furthermore, the MRI study from 06/02/21 did not identify an articular cartilage lesion in the left knee. Therefore, the supplied records do not support performing a microfracture chondroplasty of the left knee.

(See Ex. D to Sabbagh Decl., MedReview 8.23.21 Report.) The Fund's decision that procedure 29879 was not medically necessary is reasonable, supported by substantial evidence and not erroneous as a matter of law. This Court should defer to the Fund's exercise of discretion in the

denial of a benefit deemed to be medically unnecessary. See Miller, 72 F.3d at 1070 ("When an employee benefit plan grants a plan fiduciary discretionary authority to construe the terms of the plan, a district court must review deferentially a denial of benefits.") "A medical necessity determination is arbitrary and capricious only if the decision is 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" S.M. v. Oxford Health Plans (N.Y.), 644 F. App'x 81, 84 (2d Cir. 2016), citing, Fay v. Oxford Health Plan, 287 F.3d 96, 104 (2d Cir. 2002). Here, the Fund's decision neither arbitrary nor capricious was supported by the findings of an independent medical reviewer. It is reasonable and should not be disturbed by the Court.

Nothing in the Amended Complaint identifies a basis to conclude that the arbitrary and capricious standard is inapplicable in the case at bar. Applying that standard, it is clear that Plaintiff cannot state a claim upon which relief may be granted. Summary judgment in favor of the Fund is therefore warranted.

## CONCLUSION

For all the foregoing reasons, the summary judgment in favor of the Defendant and against the Plaintiff is warranted. The Amended Complaint should be dismissed with prejudice.

Dated: Woodbury, New York
January 16, 2025

COLLERAN, O'HARA & MILLS L.L.P.
*Attorneys for Defendant*

By: /s/ Thomas P. Keane
THOMAS P. KEANE (TK 4425)
100 Crossway Park Drive West, Suite 200
Woodbury, New York 11797
(516) 248-5757
tpk@cohmlaw.com

11