UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X

A.A. MEDICAL P.C.,                               :  Case No.:2:22-cv-01249(ENV)(LGD)

                              Plaintiff,   :

      -against-                        :

                                  :  **DECLARATION OF**

IRON WORKERS LOCALS 40, 361 & 417     :  **THOMAS P. KEANE**

HEALTH FUND,                      :

                          Defendant.  :

-------------------------------------------------------------------------X

       Thomas P. Keane, an attorney duly licensed to practice law in the state of New York affirms the following under penalty of perjury:

       1.     That I am an associate in the firm of COLLERAN, O'HARA & Mills L.L.P., attorneys for Defendant IRON WORKERS LOCAL 40, 361 & 417 HEALTH FUND. ("Defendant" or "Fund").  This Declaration is submitted in support of Defendant's motion for summary judgment seeking dismissal of the Amended Complaint.

       2.     Plaintiff A.A. Medical P.C. ("Plaintiff" or "AA Medical") filed the Complaint in the United States District Court for the Eastern District of New York on March 8, 2022.  See Dkt. No. 1.

       3.     Defendant was served with the Complaint on April 14, 2022.  See Dkt. No. 6. The parties stipulated to extend Defendant's time to respond to the Complaint on April 4, 2022.  See Dkt. No. 8.  The stipulation was so ordered by the Court on May 5, 2022.

       4.     Defendant timely sought leave to file a motion to dismiss on May 19, 2022.  See Dkt. No. 9.  The motion to dismiss was fully briefed on August 11, 2022.  See Dkt. No. 18.

       5.     On January 18, 2023, the Court issued an order granting the motion to dismiss without prejudice and with leave to amend the complaint.  See Dkt. No. 23.  Plaintiff filed an Amended Complaint on January 24, 2023.  See Dkt. No. 24.

6.      Defendant moved for an extension of time to answer the Amended Complaint on February 3, 2023.  <u>See</u> Dkt. No. 25.  The motion was granted on February 6, 2023.  <u>See</u> Dkt. No. 26.  Defendant filed an Answer to the Amended Complaint on February 17, 2023.  <u>See</u> Dkt. No. 27.

**WHEREFORE**, it is respectfully requested that this Court grant the Fund's Motion for Summary Judgment and dismiss Plaintiff's Amended Complaint in its entirety, and for such other and further relief as this Court deems just and proper.

Dated: Woodbury, New York
        January 16, 2025

COLLERAN, O'HARA & MILLS L.L.P.
*Attorneys for Defendant*

By: _____
THOMAS P. KEANE (TK 4425)
100 Crossway Park Drive West, Suite 200
Woodbury, New York 11797
(516) 248-5757
tpk@cohmlaw.com

EXHIBIT A

Dimitri Teresh, Esq.
**The Killian Firm, P.C.**
Tindall Executive Suites
107 Tindall Road
Middletown, New Jersey 07748
dteresh@tkfpc.com
732-912-2100
Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| AA MEDICAL, P.C. ON BEHALF OF PATIENT BS<br><br>*Plaintiff,*<br><br>v.<br><br>IRON WORKERS LOCAL 40, 361 7 417 HEALTH FUND,<br><br>*Defendant.* | Civil Action No.:<br>2:22-CV-1249-ENV-LGD<br><br><br>**RESPONSE TO DOCUMENT PRODUCTION REQUESTS** |

TO:    Thomas P. Keane, Esq.
       COLLERAN, O'HARA & MILLS, L.L.P.
       100 Crossways Park Drive West, Suite 200
       Woodbury, New York 11797
       *Attorneys for Defendant Iron Workers Local 40, 361 7 417 Health Fund*

Plaintiff, AA Medical, P.C., hereby objects and responds to the First Set of Document

Production Requests served by Defendant Iron Workers Local 40, 361 7 417 Health Fund in

accordance with the Federal Rules of Civil Procedure and the Local Rules of this Court.

Dated: June 6, 2024                    **THE KILLIAN FIRM, P.C.**


                          By:   /s Dimitri Teresh___
                                Dimitri Teresh

## RESPONSE TO DEFENDANT'S FIRST SET OF DOCUMENT REQUESTS

1.     Copies of Patient BS' medical record including, but not limited to, all records related to the procedure performed on June 16, 2021.

**RESPONSE:** AA Medical will produce non-privileged documents responsive to this request.

2.     Any and all documents and/or communications submitted to Health Fund in connection with the original invoice for the procedure performed on June 16, 2021.

**RESPONSE:**  AA Medical will produce non-privileged documents responsive to this request.

3.     A copy of the appeal sent to the Defendant on December 15, 2021, as alleged in Paragraph 28 of the Amended Complaint. Please identify the form in which the appeal was submitted to the Health Fund.

**RESPONSE:** AA Medical will produce non-privileged documents responsive to this request.

4.     Any and all documents and/or communications submitted by AA Medical to the Health Fund when AA Medical submitted its appeal on December 15, 2021.

**RESPONSE:** AA Medical will produce non-privileged documents responsive to this request.

5.     Please identify the date on which Plaintiff transmitted the medical literature referenced in Paragraphs 21, 22 and 23 of the Amended Complaint were submitted to the Health Fund. Please provide a copy of the studies referenced in Paragraphs 21, 22 and 23 of the Amended Complaint.

**RESPONSE:** The medical literature was not provided to defendant.

6.     A copy of the assignment from Patient BS to AA Medical.

**RESPONSE:** AA Medical will produce non-privileged documents responsive to this request.

7.     Copies of any and all communications between Plaintiff and the Health Fund regarding the events giving rise to this lawsuit.

**RESPONSE:** AA Medical will produce non-privileged documents responsive to this request.

DocuSign Envelope ID: 1258E7BB-7635-4939-8ED8-242CCF932DF3

**Name:** Brian SIDOTE

**DOB:**

**COMPLETE ORTHOPEDICS**
www.cortho.org
631-981-2663

## History of Present Illness

**Height:** 5'8

**Weight:** 205

**Description of how the problem happened:**
I have had knee problems in the past but it was never treated, Wednesday I was playing kickball and my knee buckled

**Location of Pain/Body Part:**
- ☒ Left Knee
- ☐ Right _____
- ☐ Other _____

**Quality of Pain**
- ☐ Aching
- ☐ Burning
- ☐ Stabbing
- ☐ Throbbing
- ☒ Sharp
- ☐ Dull
- ☐ Occasional
- ☐ Frequent
- ☒ Constant
- ☒ Worsening
- ☐ Improving
- ☐ Not changing

**Severity of Pain**
- ☐ No Pain
- ☐ Mild
- ☐ Moderate
- ☒ Severe

**Duration**
- ☒ Date of Onset: 5/25/21

**Timing**
- ☐ Acute
- ☒ Chronic
- ☐ Nighttime
- ☐ Recurrent
- ☐ Occasional

**Context**
- ☐ Fall
- ☐ Lifting
- ☐ Twisting
- ☒ Sports Injury
- ☐ Work Injury
- ☐ Motor Vehicle Accident (MVA)
- ☐ Assault

**Alleviating Factors**
- ☒ Nothing helps
- ☐ Lying Down
- ☐ Position Change
- ☐ Heat
- ☐ Ice
- ☐ Rest
- ☐ Exercise / Stretching
- ☐ OTC Medication
- ☐ Narcotics

**Aggravating Factors**
- ☒ Standing
- ☒ Walking
- ☒ Lifting
- ☒ Twisting
- ☒ Pushing / Pulling
- ☐ Throwing
- ☒ Weight Bearing
- ☒ Exercise
- ☒ Upstairs
- ☒ Downstairs
- ☐ Nighttime
- ☐ Cold Weather

**Associated Symptoms**
- ☐ Weakness
- ☐ Numbness
- ☐ Tingling
- ☒ Swelling
- ☐ Redness
- ☐ Warmth
- ☐ Catching / Locking
- ☐ Popping / Clicking
- ☐ Buckling
- ☐ Grinding
- ☐ Instability
- ☐ Radiation down leg
- ☐ Fever
- ☐ Chills
- ☐ Weight Loss
- ☐ Bladder/Bowel habits
- ☐ Tender to touch
- ☒ Pain with motion

**Previous Surgery** (for current issue)
- ☒ None
- ☐ Surgery Type & Date:
  _____

**Prior Imaging**
- ☐ None
- ☒ Xray
- ☐ MRI
- ☐ CT
- ☐ EMG

**Previous Injections**
- ☒ None
- ☐ Did not help
- ☐ Helped temporarily
- ☐ Helped a little
- ☐ Helped significantly

**Previous Physical Therapy**
- ☒ None
- ☐ Did not help
- ☐ Helped temporarily
- ☐ Helped a little
- ☐ Helped significantly
- PT Name and Tel. Number:
  _____
  _____

**Currently Working?**
- ☐ No
- ☒ Yes; Employer & Job Title:
  Iron Workers Union 365
  _____

**Accident related to MVA/Work?**
- ☐ MVA
  Date of Accident: _____
- ☐ Work
  Date of accident: _____

**Can you undergo an MRI?**
- ☒ Yes
- ☐ No, Reason: _____

AA-000001

DocuSign Envelope ID: 1258E7BB-7635-4939-8ED8-242CCF932DF3



**Name:** Brian SIDOTE

## Social and Medical History

**Primary Care Provider:** N/A      **Referring Provider:** N/A

| | | |
|---|---|---|
| Are you currently under medical treatment? | ☐ Yes ☒ No | Do you smoke? ☒ Never ☐ Former Smoker ☐ Current Smoke |
| Have you ever had any previous surgeries ? | ☐ Yes ☒ No | Do you drink alcohol? ☐ Never ☒ Occasional ☐ Frequent |
| If so, please describe_____ | | Do you use glasses/contact? ☐ Yes ☒ No |
| Are you currently taking any medications? | ☒ Yes ☐ No | Do you have a pacemaker? ☐ Yes ☒ No |
| If so, please list Oxycodone and Advil | | |

**Are you or your family diagnosed with any of the following:**    ☐ No to all

| | | | | | |
|---|---|---|---|---|---|
| AIDS/HIV | ☐ Yes ☒ No ☐ Family | Hepatitis | ☐ Yes ☒ No ☐ Family |
| Anemia | ☐ Yes ☒ No ☐ Family | High Cholesterol | ☐ Yes ☒ No ☐ Family |
| Any Issues with Anesthesia | ☐ Yes ☒ No ☐ Family | Hypertension | ☐ Yes ☒ No ☐ Family |
| Arthritis | ☐ Yes ☒ No ☐ Family | Kidney Disease | ☐ Yes ☒ No ☐ Family |
| Asthma | ☐ Yes ☒ No ☐ Family | Liver Disease | ☐ Yes ☒ No ☐ Family |
| Bleeding Disorders | ☐ Yes ☒ No ☐ Family | Orthotics | ☐ Yes ☒ No ☐ Family |
| Blood Clots | ☐ Yes ☒ No ☐ Family | Osteoporosis | ☐ Yes ☒ No ☐ Family |
| Blood Transfusion | ☐ Yes ☐ No ☐ Family | Rheumatoid Arthritis | ☐ Yes ☒ No ☐ Family |
| COPD | ☐ Yes ☒ No ☐ Family | Seizures | ☐ Yes ☒ No ☐ Family |
| Cancer | ☐ Yes ☒ No ☐ Family | Stroke | ☐ Yes ☒ No ☐ Family |
| Coronary Artery Disease | ☐ Yes ☒ No ☐ Family | Thyroid Problems | ☐ Yes ☒ No ☐ Family |
| Heart Attack | ☒ Yes ☐ No ☒ Family | Tuberculosis | ☐ Yes ☒ No ☐ Family |
| Heart Problems | ☒ Yes ☐ No ☒ Family | Ulcers | ☐ Yes ☒ No ☐ Family |

### Review Of Systems    ☒ No to all

| Constitutional | | | Cardiovascular | | | Neurological | | |
|---|---|---|---|---|---|---|---|---|
| Fever | ☐ Yes | ☐ No | Chest Pain | ☐ Yes | ☐ No | Weakness | ☐ Yes | ☐ No |
| Night Sweats | ☐ Yes | ☐ No | Palpitations | ☐ Yes | ☐ No | Numbness | ☐ Yes | ☐ No |
| Weight Gain | ☐ Yes | ☐ No | Heart murmur | ☐ Yes | ☐ No | Dizziness | ☐ Yes | ☐ No |
| Weight Loss | ☐ Yes | ☐ No | | | | Headaches | ☐ Yes | ☐ No |
| Chills | ☐ Yes | ☐ No | Respiratory | | | | | |
| | | | Cough | ☐ Yes | ☐ No | Psychiatric | | |
| Eyes | | | Shortness of breath | ☐ Yes | ☐ No | Depression | ☐ Yes | ☐ No |
| Dry Eyes | ☐ Yes | ☐ No | Sleep Apnea | ☐ Yes | ☐ No | Anxiety | ☐ Yes | ☐ No |
| Vision Change | ☐ Yes | ☐ No | | | | Memory Loss | ☐ Yes | ☐ No |
| Eye Disease/Injury | ☐ Yes | ☐ No | Gastrointestinal | | | | | |
| | | | Abdominal Pain | ☐ Yes | ☐ No | Endocrine | | |
| ENMT | | | Nausea/Vomiting | ☐ Yes | ☐ No | Fatigue | ☐ Yes | ☐ No |
| Difficulty Hearing | ☐ Yes | ☐ No | Consti[ation | ☐ Yes | ☐ No | | | |
| Ear Pain/Ringing | ☐ Yes | ☐ No | GERD | ☐ Yes | ☐ No | Hematologic/Lymphatic | | |
| Nose Bleeds | ☐ Yes | ☐ No | | | | Swollen Glands | ☐ Yes | ☐ No |
| Nose/Sinus Issues | ☐ Yes | ☐ No | Skin | | | Easy Bruising | ☐ Yes | ☐ No |
| Sore Throat | ☐ Yes | ☐ No | Rashes | ☐ Yes | ☐ No | | | |
| Snoring | ☐ Yes | ☐ No | Psoriasis | ☐ Yes | ☐ No | Allergic/Immunologic | | |
| Oral Abnormalities | ☐ Yes | ☐ No | Growths | ☐ Yes | ☐ No | Runny Nose | ☐ Yes | ☐ No |
| | | | | | | Sinus Pressure | ☐ Yes | ☐ No |
| | | | | | | Itching/Hives | ☐ Yes | ☐ No |

*By signing below, I am confirming that all the above information is true and correct.*

Patient Signature _____      Date 5/28/2021

AA-000002

DocuSign Envelope ID: 1258E7BB-7635-4939-8ED8-242CCF932DF3



## HIPAA PRIVACY AND RELEASE OF INFORMATION AUTHORIZATION

I hereby authorize AA Medical P.C. my treating physicians and their respective designees; including a third party medical records company, to use and disclose by health information (e.g., information relating to the diagnosis, treatment, claims payment, and health care services provided or to be provided to me and which identifies my name, address, social security number, Member ID number) for all purposes necessary for treatment, payment and healthcare operations, including but not limited to release of information requested by my insurance company (or carrier), any information necessary for planning purposes, as well as authority to leave messages, texts, or faxes on all numbers and emails that I have provided to the office.

I understand that any personal health information or other information released to the person or organization identified above may be subject to re-disclosure by such person/organization and may no longer be protected by applicable federal and state privacy laws.

I understand that I have a right to revoke this authorization by providing written notice to the office. However, this authorization may not be revoked if its employees or agents have taken action on this authorization prior to receiving my written notice. I also understand that I have a right to have a copy of this authorization.

I understand that information used or disclosed pursuant to this authorization may be disclosed by the recipient and may no longer be protected by federal or state law.

I further understand that this authorization is voluntary and that I may refuse to sign this authorization. My refusal to sign will not affect my eligibility for benefits or enrollment or payment for or coverage of services.

I have been advised of this practice's Privacy Practices, Release of Billing Information policy, Assignment of Benefits policy, and grant the practice Medication History Authority.

If applicable, Legal Representatives sign below:

By signing this form, I represent that I am the legal representative of the Member identified above and will provide written proof (e.g., Power of Attorney, living will, guardianship papers, etc.) that I am legally authorized to act on the Member's behalf with respect to this authorization form.

## RELEASE OF BILLING INFORMATION

I agree and provide consent for the provider and its staff to do the following on my behalf; (1) File Patient Medical Claims with my Health Plan; and (2) file any necessary appeals of denied or partially paid Patient Medical Claims with my Plan or regulatory authorities on my behalf; and (3) file any necessary external appeals with regulatory authorities; and (4) to obtain a complete copy of my Health Plan, Health Policy, Summary of Declaration of Benefits, and Plan Description; and (5) to obtain any medical records or reports of the Patient including HIV and psychological records needed to obtain reimbursement of the Patient's Medical Claims.

## ASSIGNMENT OF BENEFITS

I agree and provide consent for the provider and its staff to do the following on my behalf; (1) File Patient Medical Claims with my Health Plan; and (2) file any necessary appeals of denied or partially paid Patient Medical Claims with my Plan or regulatory authorities on my behalf; and (3) file any necessary external appeals with regulatory authorities; and (4) to obtain a complete copy of my Health Plan, Health Policy, Summary of Declaration of Benefits, and Plan Description; and (5) to obtain any medical records or reports of the Patient including HIV and psychological records needed to obtain reimbursement of the Patient's Medical Claims

_DocuSigned by:_
*Brian Sidote*

Brian SIDOTE

Signature of Patient or Personal Representative

Print Name of Patient or Personal Representative

5/28/2021

Description of Personal Representative's Authority   Date

AA-000003

DocuSign Envelope ID: 1258E7BB-7635-4939-8ED8-242CCF932DF3



## OFFICE POLICIES AND PROCEDURES

1. RELEASE OF INFORMATION: I authorize AA MEDICAL, PC, my treating physicians and their respective designees, to use and disclose my health information for all purposes necessary for treatment, payment and healthcare operations, including but not limited to release of information requested by my insurance company (or carrier), any information necessary for planning purposes, as well as authority to leave messages, texts, or faxes on all numbers and emails that I have provided to their office.

2. ASSIGNMENT OF INSURANCE: I hereby authorize my insurance benefits to be paid directly to AA MEDICAL, PC. I understand that I am financially responsible for non-covered services. I authorize the release of any medical or other information necessary to process insurance claims on my behalf.

3. FINANCIAL LIABILITY: I hereby agree to pay all charges due (or become due) to AA MEDICAL PC for care and treatment, including copayments and deductibles as provided under my plan. Benefits, if any, paid by a third party will be credited on account. I understand that I will be responsible for any charges if any of the following apply:
● My health plan requires pre authorization or referral by a Primary Care Physician before receiving services at AA MEDICAL PC and I have failed to obtain such an authorization or referral or I receive services in excess of such authorization or referral, and/or.
● My health plan determines that the services I receive at AA MEDICAL PC are not medically necessary and/or not covered by my insurance plan.
● My health plan coverage has lapsed and/or expired at the time I receive services at AA MEDICAL PC. I have chosen not to use my health plan coverage.

4. CANCELLED OR NO-SHOW APPOINTMENTS: I understand that I may incur a cancellation fee of $50 if I do not provide 24 hour notice of cancellation, or if I do not show to my appointment without calling to cancel.

5. PHONE CONSULTATIONS: If for any reason I require a phone consultation with the physician or medical staff, I am aware that there will be a charge to me as determined by the practice.

6. COLLECTIONS: If I should become delinquent on my account and sent to collections I will be responsible for all reasonable attorney fees and costs, as well as the practice fee for being sent to collections.
● I agree that reasonable attorney fees shall be equal to the greater of ⅓ of the amount outstanding or $750 per hour.
● I agree that any action to recover unpaid charges shall be venued in Suffolk County, NY.

7. PAYMENT: If I can not pay at the time of service I am aware that there is a 50 dollar processing fee in addition to my bill.

8. AUDIO-VISUAL SURVEILLANCE : I am aware that the office is under visual and audio surveillance. I am aware that I may be recorded in common areas and consent to being so.

Brian Sidote

Brian SIDOTE

_____
Signature of Patient or Personal Representative

_____
Print Name of Patient or Personal Representative

5/28/2021

_____
Description of Personal Representative's Authority   Date

Case 2:22-cv-01249-SJB-LGD   Document 71   Filed 08/08/25   Page 10 of 75 PageID #: 668

DocuSign Envelope ID: 1258E7BB-7635-4939-8ED8-242CCF932DF3



## Financial Policy and Notice of Privacy Act

We now use a Credit Card Merchant Service which gives us the ability to swipe your credit card, debit card, or health savings account card to accept payment in the office and have the number securely stored on a remote server with Instamed. The full credit card number is NOT visible to us and is NOT stored in our office.

We want to assure you that our software has been thoroughly vetted according to the strict data retention rules required by the merchant processing system. The only information stored at our office in our secure, encrypted system, is the name on the card, the expiration date, and the last 4 digits of the card number.

We require your credit card information to be stored for future payment for some of the following reasons:

- Policy has terminated, or there is a gap in coverage.
- You may have a copayment for medical services.
- You wish to set up a payment plan for a large balance on account.
- You have missed your appointment and did not advise staff

Our office will send you a receipt of any charges that are made to your card.

## AUTHORIZATION

By signing below, I authorize AA Medical to keep a credit card on file for future payments on the patients listed below with the information saved. I am aware that if any of my personal information has changed, I am responsible to notify AA Medical of the change(s) to ensure they have the most current information to contact me or process payment accurately. By signing below, I confirm I have reviewed and understand AA Medical's Financial Policy and Notice of Privacy Act

_Brian Sidote_
_____
Signature of Patient or Personal Representative

Brian SIDOTE
_____
Print Name of Patient or Personal Representative

5/28/2021

_____
Description of Personal Representative's Authority

_____
Date

## Consent for Treatment During COVID-19 Pandemic

I, _____Brian SIDOTE_____, knowingly and willingly consent to have orthopedic treatment, including but not limited to physical examinations and injections/aspiritations, completed during the COVID-19 pandemic.

I understand the COVID-19 virus has a long incubation period during which carriers of the virus may not show symptoms and still be highly contagious. It is impossible to determine who has it and who does not, given the current limits in virus testing.

I confirm that I am not presenting any of the following symptoms of COVID-19 listed below:

- Fever
- Shortness of Breath
- Dry Cough
- Runny nose
- Sore throat

I understand that air travel significantly increases my risk of contracting and transmitting the COVID-19 virus. And the CDC recommends social distancing of at least 6 feet for a period of 14 days with anyone they may be around, which is not possible with healthcare.

- I verify I have not traveled outside of the United States in the past 14 days to countries that have been affected by COVID-19.
- I verify that I have not traveled domestically within the United Stated by commercial airlines, bus, or train within the past 14 days.

Patient Signature  _____Brian Sidote_____  Date  _5/28/2021_____

AA-000005

DocuSign Envelope ID: 1258E7BB-7635-4939-8ED8-242CCF932DF3



COMPLETE
ORTHOPEDICS
www.cortho.org
631-981-2663

## HIPAA PRIVACY AND RELEASE OF INFORMATION AUTHORIZATION

I hereby authorize AA Medical P.C. my treating physicians and their respective designees; including a third party medical records company, to use and disclose by health information (e.g., information relating to the diagnosis, treatment, claims payment, and health care services provided or to be provided to me and which identifies my name, address, social security number, Member ID number) for all purposes necessary for treatment, payment and healthcare operations, including but not limited to release of information requested by my insurance company (or carrier), any information necessary for planning purposes, as well as authority to leave messages, texts, or faxes on all numbers and emails that I have provided to the office.

I understand that any personal health information or other information released to the person or organization identified above may be subject to re-disclosure by such person/organization and may no longer be protected by applicable federal and state privacy laws.

I understand that I have a right to revoke this authorization by providing written notice to the office. However, this authorization may not be revoked if its employees or agents have taken action on this authorization prior to receiving my written notice. I also understand that I have a right to have a copy of this authorization.

I understand that information used or disclosed pursuant to this authorization may be disclosed by the recipient and may no longer be protected by federal or state law.

I further understand that this authorization is voluntary and that I may refuse to sign this authorization. My refusal to sign will not affect my eligibility for benefits or enrollment or payment for or coverage of services.

I have been advised of this practice's Privacy Practices, Release of Billing Information policy, Assignment of Benefits policy, and grant the practice Medication History Authority.

If applicable, Legal Representatives sign below:

By signing this form, I represent that I am the legal representative of the Member identified above and will provide written proof (e.g., Power of Attorney, living will, guardianship papers, etc.) that I am legally authorized to act on the Member's behalf with respect to this authorization form.

## RELEASE OF BILLING INFORMATION

I agree and provide consent for the provider and its staff to do the following on my behalf; (1) File Patient Medical Claims with my Health Plan; and (2) file any necessary appeals of denied or partially paid Patient Medical Claims with my Plan or regulatory authorities on my behalf; and (3) file any necessary external appeals with regulatory authorities; and (4) to obtain a complete copy of my Health Plan, Health Policy, Summary of Declaration of Benefits, and Plan Description; and (5) to obtain any medical records or reports of the Patient including HIV and psychological records needed to obtain reimbursement of the Patient's Medical Claims.

## ASSIGNMENT OF BENEFITS

I agree and provide consent for the provider and its staff to do the following on my behalf; (1) File Patient Medical Claims with my Health Plan; and (2) file any necessary appeals of denied or partially paid Patient Medical Claims with my Plan or regulatory authorities on my behalf; and (3) file any necessary external appeals with regulatory authorities; and (4) to obtain a complete copy of my Health Plan, Health Policy, Summary of Declaration of Benefits, and Plan Description; and (5) to obtain any medical records or reports of the Patient including HIV and psychological records needed to obtain reimbursement of the Patient's Medical Claims

| | |
|---|---|
| _DocuSigned by_ Brian Sidote | Brian SIDOTE |
| Signature of Patient or Personal Representative | Print Name of Patient or Personal Representative |
| | 5/28/2021 |
| Description of Personal Representative's Authority | Date |

AA-000006

I hereby assign and convey all benefit and non-benefit rights (including the rights to all payments) under my health insurance policy or benefit plan to AA Medical, P.C. with respect to all medical services provided by AA Medical, P.C. and its surgeons or providers for all dates of service. It is specifically intended by this assignment of benefits to assign all of my rights to bring any appeal, lawsuit or administrative proceeding for and on my behalf, in my name against any person or entity involved in the determination of benefits under my insurance policy of benefit plan, including any fiduciary claim.

I hereby appoint as my Designated Authorized Representative AA Medical, P.C. under ERISA and its governing regulations and rulemaking, to communicate with my insurers, plan fiduciaries, employers, and claims administrators related to my plan benefits and internal appellate rights.

AA Medical, P.C. is hereby authorized and directed to provide and release by Protected Health Information ("PHI") for purposes of exercising the rights and benefits set forth in this Assignment and Designated Authorized Representative to any "Covered Person" (included payors or other entities that may assist in reimbursement). I direct the plan, plan sponsor, and claims administrator to share all PHI with my provider and Authorized Representative.

I understand and agree that this Assignment and Designation of Authorized Representative shall remain in full force and effect for all current and future dates of service until such time as I may revoke this authority upon written notice.

Brian Sidote

Signature of Patient or Personal Representative     Print Name of Patient or Personal Representative

    5/28/2021

Description of Personal Representative's Authority     Date

AA-000007

DocuSign Envelope ID: 1258E7BB-7635-4939-8ED8-242CCF932DF3



## OFFICE POLICIES AND PROCEDURES

1. RELEASE OF INFORMATION: I authorize AA MEDICAL, PC, my treating physicians and their respective designees, to use and disclose my health information for all purposes necessary for treatment, payment and healthcare operations, including but not limited to release of information requested by my insurance company (or carrier), any information necessary for planning purposes, as well as authority to leave messages, texts, or faxes on all numbers and emails that I have provided to their office.

2. ASSIGNMENT OF INSURANCE: I hereby authorize my insurance benefits to be paid directly to AA MEDICAL, PC. I understand that I am financially responsible for non-covered services. I authorize the release of any medical or other information necessary to process insurance claims on my behalf.

3. FINANCIAL LIABILITY: I hereby agree to pay all charges due (or become due) to AA MEDICAL PC for care and treatment, including copayments and deductibles as provided under my plan. Benefits, if any, paid by a third party will be credited on account. I understand that I will be responsible for any charges if any of the following apply:
● My health plan requires pre authorization or referral by a Primary Care Physician before receiving services at AA MEDICAL PC and I have failed to obtain such an authorization or referral or I receive services in excess of such authorization or referral, and/or.
● My health plan determines that the services I receive at AA MEDICAL PC are not medically necessary and/or not covered by my insurance plan.
● My health plan coverage has lapsed and/or expired at the time I receive services at AA MEDICAL PC. I have chosen not to use my health plan coverage.

4. CANCELLED OR NO-SHOW APPOINTMENTS: I understand that I may incur a cancellation fee of $50 if I do not provide 24 hour notice of cancellation, or if I do not show to my appointment without calling to cancel.

5. PHONE CONSULTATIONS: If for any reason I require a phone consultation with the physician or medical staff, I am aware that there will be a charge to me as determined by the practice.

6. COLLECTIONS: If I should become delinquent on my account and sent to collections I will be responsible for all reasonable attorney fees and costs, as well as the practice fee for being sent to collections.
● I agree that reasonable attorney fees shall be equal to the greater of ⅓ of the amount outstanding or $750 per hour.
● I agree that any action to recover unpaid charges shall be venued in Suffolk County, NY.

7. PAYMENT: If I can not pay at the time of service I am aware that there is a 50 dollar processing fee in addition to my bill.

8. AUDIO-VISUAL SURVEILLANCE : I am aware that the office is under visual and audio surveillance. I am aware that I may be recorded in common areas and consent to being so.

| | |
|---|---|
| *Brian Sidote* | Brian SIDOTE |
| **Signature of Patient or Personal Representative** | **Print Name of Patient or Personal Representative** |
| | 5/28/2021 |
| **Description of Personal Representative's Authority** | **Date** |

AA-000008

DocuSign Envelope ID: 1258E7BB-7635-4939-8ED8-242CCF932DF3



COMPLETE
ORTHOPEDICS
www.cortho.org
631-981-2663

## Financial Policy and Notice of Privacy Act

We now use a Credit Card Merchant Service which gives us the ability to swipe your credit card, debit card, or health savings account card to accept payment in the office and have the number securely stored on a remote server with Instamed. The full credit card number is NOT visible to us and is NOT stored in our office.

We want to assure you that our software has been thoroughly vetted according to the strict data retention rules required by the merchant processing system. The only information stored at our office in our secure, encrypted system, is the name on the card, the expiration date, and the last 4 digits of the card number.

We require your credit card information to be stored for future payment for some of the following reasons:
- Policy has terminated, or there is a gap in coverage.
- You may have a copayment for medical services.
- You wish to set up a payment plan for a large balance on account.
- You have missed your appointment and did not advise staff

Our office will send you a receipt of any charges that are made to your card.

### AUTHORIZATION

By signing below, I authorize AA Medical to keep a credit card on file for future payments on the patients listed below with the information saved. I am aware that if any of my personal information has changed, I am responsible to notify AA Medical of the change(s) to ensure they have the most current information to contact me or process payment accurately. By signing below, I confirm I have reviewed and understand AA Medical's Financial Policy and Notice of Privacy Act

_Brian Sidote_
_____
Signature of Patient or Personal Representative

Brian SIDOTE
_____
Print Name of Patient or Personal Representative

5/28/2021

_____
Description of Personal Representative's Authority

_____
Date

## Consent for Treatment During COVID-19 Pandemic

Brian SIDOTE
I, _____, knowingly and willingly consent to have orthopedic treatment, including but not limited to physical examinations and injections/aspirations, completed during the COVID-19 pandemic.

I understand the COVID-19 virus has a long incubation period during which carriers of the virus may not show symptoms and still be highly contagious. It is impossible to determine who has it and who does not, given the current limits in virus testing.

I confirm that I am not presenting any of the following symptoms of COVID-19 listed below:
- Fever
- Shortness of Breath
- Dry Cough
- Runny nose
- Sore throat

I understand that air travel significantly increases my risk of contracting and transmitting the COVID-19 virus. And the CDC recommends social distancing of at least 6 feet for a period of 14 days with anyone they may be around, which is not possible with healthcare.

- I verify I have not traveled outside of the United States in the past 14 days to countries that have been affected by COVID-19.
- I verify that I have not traveled domestically within the United Stated by commercial airlines, bus, or train within the past 14 days.

Patient Signature    _Brian Sidote_____    Date    5/28/2021

AA-000009

### AA MEDICAL
### 2500 NESCONSET HWY
### BUILDING 10 UNIT D
### STONY BROOK, NY 11790

**Date:** 12/15/2021

ATTENTION: IRON WORKERS CLAIM DEPARTMENT

| PATIENT: BRIAN SIDOTE | DOB: |
|---|---|

ID NUMBER : MID0024054

| CLAIM #  1993382 | DOS: 06/16/2021 |
|---|---|

PROVIDER: VEDANT VAKSHA, MD

TAX ID NUMBER: 462667021

OUR RECORDS INDICATE THAT THE ABOVE CLAIM HAS BEEN UNDERPAID. WE
REQUEST THAT THE CLAIM BE SENT BACK FOR REVIEW. IN ADDITION WE HEREBY
MAKE A FORMAL REQUEST FOR THE CERTIFICATE OR SUMMARY PLAN
DESCRIPTION (SPD) APPLICABLE TO THE HEALTHCARE PLAN GOVERNING THIS
CLAIM. YOU ARE REQUIRED TO MAKE THIS DOCUMENT AVAILABLE TO US.

THANK YOU,

DONNA AIELLO, BILLING ADMINISTRATOR

EMAIL: BILLING@CORTHO.ORG

(631)237-3913

FAX #(212)203-9223

AA-000010

AA-000011

MAGNACARE UNION WELFARE LOCAL 202868
PO BOX 1001

GARDEN CITY, NY 115308001

# HEALTH INSURANCE CLAIM FORM

APPROVED BY NATIONAL UNIFORM CLAIM COMMITTEE (NUCC) 02/12

CARRIER

XXX PICA | | | PICA XXX

| 1. MEDICARE | MEDICAID | TRICARE | CHAMPVA | GROUP HEALTH PLAN | FECA BLK LUNG | OTHER | 1a. INSURED'S I.D. NUMBER (For Program in Item 1) |
|---|---|---|---|---|---|---|---|
| (Medicare#) | (Medicaid#) | (ID#/DoD#) | (Member ID#) | (ID#) | (ID#) | (ID#) | MID0024054 |

**2. PATIENT'S NAME (Last Name, First Name, Middle Initial)**
SIDOTE BRIAN

**3. PATIENT'S BIRTH DATE    SEX**
F

**4. INSURED'S NAME (Last Name, First Name, Middle Initial)**
SIDOTE BRIAN

**6. PATIENT RELATIONSHIP TO INSURED**
Self [X]  Spouse [ ]  Child [ ]  Other [ ]

STATE NY

**8. RESERVED FOR NUCC USE**

STATE NY

**ZIP CODE** 117952809    **TELEPHONE (Include Area Code)** (

**ZIP CODE** 117952809    **TELEPHONE (Include Area Code)** (

**9. OTHER INSURED'S NAME (Last Name, First Name, Middle Initial)**

**10. IS PATIENT'S CONDITION RELATED TO:**

**11. INSURED'S POLICY GROUP OR FECA NUMBER**

**a. OTHER INSURED'S POLICY OR GROUP NUMBER**

**a. EMPLOYMENT? (Current or Previous)**
YES [ ]  NO [X]

**a. INSURED'S DATE OF BIRTH    SEX**
M [X]  F [ ]

**b. RESERVED FOR NUCC USE**

**b. AUTO ACCIDENT?**
YES [ ]  NO [X]    PLACE (State)

**b. OTHER CLAIM ID (Designated by NUCC)**

**c. RESERVED FOR NUCC USE**

**c. OTHER ACCIDENT?**
YES [ ]  NO [X]

**c. INSURANCE PLAN NAME OR PROGRAM NAME**
MAGNACARE UNION WELFARE LOCAL

**d. INSURANCE PLAN NAME OR PROGRAM NAME**

**10d. CLAIM CODES (Designated by NUCC)**

**d. IS THERE ANOTHER HEALTH BENEFIT PLAN?**
YES [ ]  NO [X]    *If yes,* complete items 9, 9a, and 9d.

**READ BACK OF FORM BEFORE COMPLETING & SIGNING THIS FORM.**

**12. PATIENT'S OR AUTHORIZED PERSON'S SIGNATURE** I authorize the release of any medical or other information necessary to process this claim. I also request payment of government benefits either to myself or to the party who accepts assignment below.

SIGNED SIGNATURE ON FILE    DATE 07 29 2021

**13. INSURED'S OR AUTHORIZED PERSON'S SIGNATURE** I authorize payment of medical benefits to the undersigned physician or supplier for services described below.

SIGNED SIGNATURE ON FILE

PATIENT AND INSURED INFORMATION

**14. DATE OF CURRENT ILLNESS, INJURY, or PREGNANCY (LMP)**
MM 06 DD 16 YY 2021  QUAL. 431

**15. OTHER DATE**
QUAL.    MM DD YY

**16. DATES PATIENT UNABLE TO WORK IN CURRENT OCCUPATION**
FROM MM DD YY    TO MM DD YY

**17. NAME OF REFERRING PROVIDER OR OTHER SOURCE**
17a.
17b. NPI

**18. HOSPITALIZATION DATES RELATED TO CURRENT SERVICES**
FROM MM DD YY    TO MM DD YY

**19. ADDITIONAL CLAIM INFORMATION (Designated by NUCC)**

**20. OUTSIDE LAB?**
YES [ ]  NO [X]    $ CHARGES

**21. DIAGNOSIS OR NATURE OF ILLNESS OR INJURY** Relate A-L to service line below (24E)    ICD Ind. 0

A. M25562  B.  C.  D.
E.  F.  G.  H.
I.  J.  K.  L.

**22. RESUBMISSION CODE**    ORIGINAL REF. NO.

**23. PRIOR AUTHORIZATION NUMBER**

| 24. A. DATE(S) OF SERVICE From MM DD YY | To MM DD YY | B. PLACE OF SERVICE | C. EMG | D. PROCEDURES, SERVICES, OR SUPPLIES (Explain Unusual Circumstances) CPT/HCPCS | MODIFIER | E. DIAGNOSIS POINTER | F. $ CHARGES | G. DAYS OR UNITS | H. EPSDT Family Plan | ID. QUAL. | J. RENDERING PROVIDER ID. # |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 06 16 21 | 06 16 21 | 22 | | 29883 | 59 LT | A | 99756 32 | 1 | | NPI | 1760762033 |
| 2 | 06 16 21 | 06 16 21 | 22 | | 29879 | LT | A | 58682 32 | 1 | | NPI | 1760762033 |
| 3 | | | | | | | | | | | NPI | |
| 4 | | | | | | | | | | | NPI | |
| 5 | | | | | | | | | | | NPI | |
| 6 | | | | | | | | | | | NPI | |

**25. FEDERAL TAX I.D. NUMBER    SSN EIN**
462667021    [X]

**26. PATIENT'S ACCOUNT NO.**
7445V21645

**27. ACCEPT ASSIGNMENT?** (For govt. claims, see back)
[X] YES  [ ] NO

**28. TOTAL CHARGE**
$ 158438 64

**29. AMOUNT PAID**
$ 0 00

**30. Rsvd for NUCC Use**
158438 64

**31. SIGNATURE OF PHYSICIAN OR SUPPLIER INCLUDING DEGREES OR CREDENTIALS**
(I certify that the statements on the reverse apply to this bill and are made a part thereof.)
VEDANT VAKSHA, MD
SIGNED 07 29 2021    DATE

**32. SERVICE FACILITY LOCATION INFORMATION**
AA MEDICAL P.C.
50 NY 25 A
SMITHTOWN NY 117873448
a. 1982663423    b.

**33. BILLING PROVIDER INFO & PH #** ( )
AA MEDICAL, P.C.
PO BOX 27140
BELFAST ME 049152023
a. 1093150385    b.

PHYSICIAN OR SUPPLIER INFORMATION

AA-000062

DOCUMENT
7445

**Clinical Documents**

 **St. Catherine of Siena**
**Medical Center**
Catholic Health Services
At the heart of health

**ST CATHERINE OF SIENA**
**SMITHTOWN, NEW YORK**

**REPORT OF OPERATION**

E1813629
BRIAN SIDOTE
3034455730

PT TYPE:

LOCATION:    SGS

PATIENT'S NAME: Sidote, Brian

DATE OF PROCEDURE: 06/16/2021

DATE OF BIRTH:

SURGEON: Vedant Vaksha, MD

ASSISTANTS:
1. Patrick Greger, PA
2. Brian James, PA

PREOPERATIVE DIAGNOSES:
1. Left knee ACL tear.
2. Left knee medial meniscus, posterior horn tear.
3. Left knee lateral meniscus tear, bucket handle.

POSTOPERATIVE DIAGNOSES:
1. Left knee medial meniscus root tear.
2. Left knee bucket handle lateral meniscus tear with the left knee ACL tear.

OPERATIONS:
1. Left knee medial meniscus root repair.
2. Left knee lateral meniscus repair.
3. Left knee microfracture chondroplasty.

COMPLICATIONS: None.

SPECIMENS: Shavings.

TOURNIQUET TIME: 127 minutes.

BLOOD LOSS: 50 cc.

INDICATION FOR PROCEDURE: The patient is a 34-year-old male who came to my office following injury to the left knee in a kickball game. He came in with a swollen knee. I aspirated the knee and drained blood from the knee. The patient was sent for MRI, which showed the above-mentioned findings. We discussed treatment options and the patient

AA-000013

BRIAN SIDOTE
E1813629
3034455730

opted for surgical management. We discussed possibility of need for repair versus
resection of the medial and lateral meniscus and possibility of repair versus reconstruction
of ACL tear found one. We also discussed the possibility of staging the procedure if the
meniscus repair was prolonged. We also discussed risks and benefits including infection,
bleeding, injury to adjacent nerves and vessels, rehabilitation, need for repeat surgery,
failure, staging procedure, knee stiffness, and need for manipulation, need for
rehabilitation, systemic complications including blood clot, cardiac or pulmonary,
neurological complications including death. The patient understood and signed an
informed consent.

DESCRIPTION OF PROCEDURE: The patient was taken to the operating room where
general anesthesia was induced. The left lower extremity was prepped and draped
aseptically in usual fashion. Preop antibiotic was given. A gram of tranexamic acid was
also given. Timeout was called. Tourniquet was elevated after exsanguination.

Lateral entry portal was made for the arthroscope. Arthroscope was entered. There was
hemarthrosis, this was drained. Medial entry portal was made with use of spinal needle.
Examination of the medial tibiofemoral compartment showed tear of the posterior horn
meniscus, which was freed. The portion of the meniscus was resected. Further
examination showed that the root was avulsed and tagged by only the capsular
attachment.

Decision was done to root repair. Examination of the intercondylar notch showed tear of
the ACL with synovial reaction. Examination of the lateral tibiofemoral compartment
showed a bucket handle tear, which was into the intercondylar notch. There was also a
flap along the posterior horn of the medial meniscus in a form of a tongue. The decision
was done to repair the meniscus. Posterolateral incision was given along the
posterolateral corner of the knee. With sharp and blunt dissection along the posterior
margin of the LCL, the knee capsule was reached. A space was generated between the
gastrocnemius and the knee capsule. A speculum was inserted to avoid injury to the
neurovascular bundle posterior to the knees.

Now, the repair of lateral meniscus was planned. Combination of FastFixes as well as
Ti-Cron needle sutures should pass through _____ specific cannulas were done.
The repair also involved tying down the tongue fragment along with the bucket handle
fragment. The meniscal soft tissues were prepared before the repair with the use of shaver
and rasp. All the three Ti-Cron needles could have been passed along with the use of six
FastFixes for all inside repair. The Ti-Cron needle was delivered out of the posterolateral
wound. Pictures were taken and saved.

Now, the scope was entered into the medial portal to complete the repair of the lateral
meniscus. The repair of the medial root was performed through the medial portal and the
scope in the lateral portal.

AA-000014



The attached proposal is being submitted to you for consideration and remittance of payment on the below detailed claim in accordance with the terms and conditions contained herein.

| Details | | | | |
|---|---|---|---|---|
| | Patient ID: | 73743380 | Contact: | Donna xt 1053 |
| | Patient Name: | SIDOTE, BRIAN | Phone: | 6319812663 |
| | Date(s) of Service: | 06/16/21 - 06/16/21 | Fax: | 212-203-9223 |
| | Payor: | Iron Workers Locals 40, 361 and 417 Health Fund | | |
| | Claim ID: | 1993382 | | |
| | Provider: | AA MEDICAL PC | | |
| | Total Billed Amount: | $158,438.64 | | |
| | Repriced Amount: | $797.75 | | |

**Terms**    This Agreement outlines Provider's willingness to accept the following terms on the above claim:

1. The Repriced Amount will be agreed to on this claim.

2. Any interest or penalties relating to the claims processed by the Payor will be waived by Provider.

3. In consideration, Provider will receive payment within 15-20 working days from the date this document is received in the Zelis office. The EOB/EOP remark will designate that the discount is through Zelis or PHX.

4. Payment from the Payor will be subject to any benefit plan terms such as deductibles, co-insurance, co-pays, exclusions and code edit reductions per the plan guidelines. Provider agrees not to balance bill the Payor, administrator and/or patient for the difference between the Total Billed Amount and the Repriced Amount in accordance with the terms of this Agreement.

**Acceptance**    I have the authority to accept the provisions outlined in this Agreement and further provide the payor the assurance the proceeds associated with this claim have not been previously assigned to any other organization.

Please sign below and fax to (973) 587-2102 or call us at (908) 389-8400.

_____        _____
Signature                                Date

_____        _____
Printed Name                             E-Mail Address

If you have any questions, please contact me at (908) 389-8400.

Sincerely,

*Samantha Gries*

Samantha Gries
Claims Associate

*Zelis Claims Integrity LLC is not financially responsible and/or liable for any payments to the Provider. Payment of benefits, if any, is subject to the terms and conditions of the Payor's plan design and/or existing contracts. This agreement does not constitute, nor should it be construed as, a guaranty of payment by the Payor.

Zelis Claim ID: 203652209

AA-000015



The attached proposal is being submitted to you for consideration and remittance of payment on the below detailed claim in accordance with the terms and conditions contained herein.

| Details | | | | |
|---|---|---|---|---|
| | Patient ID: | 73743380 | Contact: | Donna xt 1053 |
| | Patient Name: | SIDOTE, BRIAN | Phone: | 6319812663 |
| | Date(s) of Service: | 07/15/21 - 07/15/21 | Fax: | 212-203-9223 |
| | Payor: | Iron Workers Locals 40, 361 and 417 Health Fund | | |
| | Claim ID: | 1993383 | | |
| | Provider: | AA MEDICAL PC | | |
| | Total Billed Amount: | $96,549.87 | | |
| | Repriced Amount: | $651.97 | | |

**Terms**

This Agreement outlines Provider's willingness to accept the following terms on the above claim:

1. The Repriced Amount will be agreed to on this claim.

2. Any interest or penalties relating to the claims processed by the Payor will be waived by Provider.

3. In consideration, Provider will receive payment within 15-20 working days from the date this document is received in the Zelis office. The EOB/EOP remark will designate that the discount is through Zelis or PHX.

4. Payment from the Payor will be subject to any benefit plan terms such as deductibles, co-insurance, co-pays, exclusions and care edit reductions per the plan guidelines. Provider agrees not to balance bill the Payor, administrator and/or patient for the difference between the Total Billed Amount and the Repriced Amount in accordance with the terms of this Agreement.

**Acceptance**

I have the authority to accept the provisions outlined in this Agreement and further provide the payor the assurance the proceeds associated with this claim have not been previously assigned to any other organization.

Please sign below and fax to (973) 587-2102 or call us at (908) 389-8400.

_____    _____
Signature                                                    Date

_____    _____
Printed Name                                              E-Mail Address

If you have any questions, please contact me at (908) 389-8400.

Sincerely,

Samantha Gries

Samantha Gries
Claims Associate

*Zelis Claims Integrity LLC is not financially responsible and/or liable for any payments to the Provider. Payment of benefits, if any, is subject to the terms and conditions of the Payor's plan design and/or existing contracts. This agreement does not constitute, nor should it be construed as, a guaranty of payment by the Payor.*

Zelis Claim ID: 203652210

AA-000016

## AA MEDICAL
## 2500 NESCONSET HWY
## BUILDING 10 UNIT D
## STONY BROOK, NY 11790

**Date:**   09/28/2021

ATTENTION: APPEAL DEPARTMENT                    FAX 845-336-7989

| |
|---|
| **PATIENT : BRAIN SIDOTE** |
| **ID #   MID0024054** |
| **TAX ID NUMBER:  462667021** |
| **OUR RECORDS INDICATE THAT CLAIMS FOR THE ABOVE ID NUMBER AND TAX ID NUMBER WERE UNDERPAID.  WE ARE REQUESTING THAT YOU SEND THE PLAN DOCUMENTS FOR THIS PATIENT. PLEASE CONSIDER AS AN APPEAL FOR ALL CLAIMS ON THIS PATIENT.** |
| **PLEASE CONTACT ME IF YOU HAVE ANY FURTHER QUESTIONS** |
| **THANK YOU,** |
| **DONNA AIELLO, BILLING ADMINISTRATOR** |
| **EMAIL: BILLING@CORTHO.ORG** |
| **(631)237-3913** |
| **FAX #(212)203-9223** |
| |
| |
| |

AA-000017

Dear Appeals/Plan Administrator[1],

　　We are counsel to AA medical PC (tax ID 462667021), the assignee and designated authorized representative of the patient[2] and are filing this First Level Member Appeal on their behalf. Attached are the requisite authorization, assignment and HIPAA forms. All further communications regarding this claim should be directed to our attention as authorized legal counsel.

**PLEASE SEE ATTACHED CLINICALS AND EOBS WITH CPTS AND BILLED AND PAID AMOUNTS ALONG WITH CLAIM NUMBER**

　　Patient is a member of, beneficiary of, participant in, and/or insured by a health insurance policy or benefit plan (the "Plan") issued and/or administered by ("Insurance Company") and/or sponsored by ("Employer").

　　Please note the Provider's superior education, experience and skills.

　　A total billed charge was billed by our client as their reasonable and customary fee for these services and the Plan reimbursed less than the billed charges. Payment of the billed charges was not made in accordance with the Plan.

　　In addition to the items listed on Exhibits A and B, this appeal challenges the issues below in the administration of this claim.

　　We hereby request from the Plan Administrator copies of all of the documents listed on Exhibit B to this appeal. Documents should be sent to the undersigned at the address set forth on this letter. Please also advise if the Plan maintains an anti-assignment clause prohibiting a member from assigning its benefits and rights under the Plan to a third party.[3] Notwithstanding an anti-assignment clause, we maintain our right to act as a limited power of attorney in this instance.

---

[1] This appeal is filed with the Plan Administrator of the above captioned plan, or appropriate named fiduciary or insurer of the plan. Any individual who is not designated as plan administrator or appropriate named fiduciary by this plan is required, by ERISA and as your fiduciary duty, to forward this appeal document to such appropriate individual.

[2] Case law states that an assignee of a valid ERISA assignment (as is the case here) obligates the insurance company to make all reimbursement payments directly to the provider. See, Robert Metcalf v. Blue Cross Blue Shield of Michigan et al., 57 F. Supp. 3d 1281 (D. Or. 2013). (Insurance company must pay an out-of-network provider with a valid complete ERISA assignment, even after his patients were already paid. Any additional payments made to patient will not extinguish insurance companies' obligation to pay the provider under ERISA when provider holds a valid complete ERISA assignment).

[3] See American Orthopedic & Sports Medicine v. Independence Blue Cross Blue Shield, 890 F.3d 445 (3d Cir. 2018)(court left open the right of providers under an ERISA plan to challenge payment through a 'power of attorney' granted by the patient to the provider.)

AA-000018

Additional payment is required for this claim so that benefits are paid in accordance with the Plan. A response to this First Level Member Appeal is required within 30 days of the date hereof as provided under ERISA. The response must address each and every argument raised herein in order to comply with the requirements of ERISA.

If you have any questions, do not hesitate to contact me.

Sincerely,

Donna Aiello

Billing Administrator, AA Medical PC

Phone: 631-237-3913

Fax: 212-203-9223
Email: billing@cortho.org

2500 Nesconset Highway, Building 10 Unit D
Stony Brook, NY 11790

w/ enc.

Aaron A. Mitchell, Esq.
*Partner*
Lawall & Mitchell, LLC
p: 973-285-3280
c: 914-760-8963
w:lmesq.com
e: aaron@lmesq.com

The contents of this letter, together with any attachments, are intended only for the use of the individual or entity to which they are addressed and may contain information that is legally privileged, confidential and exempt from disclosure and may contain medical information under HIPAA and State and Federal Privacy Disclosure Laws. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please notify the original sender immediately and discard this letter, along with any attachments, from your computer and/or your physical possession.

AA-000019

## EXHIBIT A

The administration of this claim has been undertaken in violation of ERISA as follows:

1. The notice of adverse benefit determination failed to comply with the requirements of ERISA. 29 C.F.R. § 2560.503–1(g)

2. This claim was not processed on a timely basis as required by ERISA and under the Plan. 29 C.F.R. § 2560.503-1(f)

3. The Claims Administrator engaged in procedural irregularities for the purpose of hindering and/or delaying the processing of this claim. Abatie v. Alta Health & Life Ins. Co., 458 F. 3d 955 (9th Cir. 2006)

4. The Claims Administrator under the Plan has several conflicts of interest and has placed its own financial interest ahead of the Patient. Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 117 (2008)

5. The Insurance Company purposely narrows its network of providers in an effort to shift costs to plan participants in violation of ERISA.

6. The administration of this claim has discriminated against the Patient in violation of Federal and State law.

7. The administration of the claim violated applicable State statutory and common law.

8. The administration of this claim did not meet the reasonable expectations of the Patient.

9. Out-of-network benefits under the Plan are illusory. Interline Brands, Inc. v. Chartis Specialty Ins. Co., 749 F.3d 962, 966–67 (11th Cir. 2014); Point of Rocks Ranch, LLC v. Sun Valley Title Ins. Co., 143 Idaho 411, 146 P.3d 677, 680 (2006)

10. Fiduciaries under the Plan did not administer the Plan solely for the benefit of Patient.

11. Fiduciaries of the Plan misrepresented the benefits available under the Plan and did not disclose in reasonably clear language, understood by the ordinary person, the limitations of benefits under the Plan. 29 CFR 2520.102-2(a); Moench v. Robertson, 62 F. 3d. 553, 566 (3d Cir. 1995)

12. Plan Sponsor and/or Plan Administrator violated their fiduciary duties of loyalty and prudence in the selection and ongoing monitoring of Insurance Company. Tibble v. Edison Int'l, 135 S. Ct. 1823, 1826 (2015); DOL Information Letter to D. Ceresi, 1998 WL 1638068 (Feb. 19, 1998)

AA-000020

**EXHIBIT B**

1. Identification of the Plan Administrator and Plan Sponsor of this employee benefit health plan, including name, address, email address and telephone number.
2. Identification of the Claims Administrator of this employee benefit health plan, including name, address, email address and telephone number.
3. A complete copy of the controlling Plan Documents including all amendments, Summary Plan Description(s) (SPD) or Certificate of Insurance.
4. The latest annual report (Form 5500), bargaining agreement, trust agreement, contract or other instruments under which the plan is established and operated.
5. A complete copy of any past and current contracts between this employee benefit plan and the third party administrator (TPA), under which the plan is established or operated, in accordance with DOL Advisory Opinion 97-11A.
6. The specific plan provisions on which the denial was based.
7. The appeal (claims review) procedures established and maintained for this plan as required by ERISA.
8. Any and all internal rules, guidelines, protocols or other similar criterion relied upon in making the adverse benefit determination.
9. Any document or instrument that specifies procedures, formulas, methodologies, or schedules to be applied in determining or calculating a participant's or beneficiary's benefit entitlement under an employee benefit plan. Accordingly, studies, schedules or similar documents that contain information and data, such as information and data relating to standard charges for specific medical or surgical procedures, that, in turn, serve as the basis for determining or calculating a participant's or beneficiary's benefit entitlements under an employee benefit plan would constitute "instruments under which the plan is operated including the schedule of "usual and customary" fees or "allowable amounts".
10. An explanation of the scientific or clinical judgment for the determination regarding medical necessity or experimental treatment and any scientific information relied on.
11. Identification and professional qualifications as well as credentials of individual(s) who performed clinical claims determinations.
12. Identification and professional qualifications as well as credentials of individual(s) who performed billing and claims determinations.
13. Any and all internal memos and telephone communication logs associated with this claim denial and appeal, including any in-house and outside counsel's advice and opinions rendered on record in connection with handling this claim denial and review.
14. Identification of the forum that has been designated in the Plan for post-appeal disputes/litigation (e.g., American Arbitration Association, Federal Court, State Court).

AA-000021

**Iron Workers Locals 40, 361 & 417 Health Fund**
451 Park Ave South, New York, NY 10016

Payee: AA MEDICAL PC

Payee Tax ID # 46-2667021          Check Amount: $3,473.22

| Insured: | BRIAN SIDOTE | Relationship: SELF | Plan: Indemnity Plan |
| Patient: | BRIAN SIDOTE | Paid To: Provider    Claim #: 1993382 | Check#: 1750416 |
| Provider: | VEDANT VAKSHA | Patient Account: 7445V21645 | Check Date: 10/19/2021 |

| Date(s) of Service | Proc | Qty | Billed | Cons | Inelig | Co Pay | Ded | Co Ins | Paid | Cmt |
|---|---|---|---|---|---|---|---|---|---|---|
| 06/16/21  06/16/21 | 2988359 Knee Arthroscopy/Surg | 1.00 | 99,756.32 | 5,668.09 | 0.00 | 0.00 | 195.00 | 1,999.87 | 3,473.22 | |
| 06/16/21  06/16/21 | 29879LT Knee Arthroscopy/Surg | 1.00 | 58,682.32 | 0.00 | 58,682.32 | 0.00 | 0.00 | 0.00 | 0.00 | CONSD |

The operative report does not describe any lesion in the knee that would require a microfracture chondroplasty. Furthermore, the MRI study from 06/02/21 did not identify an articular cartilage lesion in the left knee. Therefore, the supplied records do not support performing a microfracture chondroplasty of the left knee.

| | Claim Totals: | 158,438.64 | 5,668.09 | 58,682.32 | 0.00 | 195.00 | 1,999.87 | 3,473.22 |
|---|---|---|---|---|---|---|---|---|

Cmt Code : CONSD - Procedure denied as per Medical Consultant review.;

**Check Image Extracted**

110321-2-9334-1935

AA-000022

EXHIBIT B

Page 1

1           UNITED STATES DISTRICT COURT

2           EASTERN DISTRICT OF NEW YORK

3    _____

4    AA MEDICAL, P.C.,

5              Plaintiff,

6         v.                              Case No.

7    IRON WORKERS LOCALS 40, 361 & 417    2:22-cv-

8    HEALTH FUND,                         01249

9              Defendant.                 (ENV)(LGD)

10   _____

11            DEPOSITION OF NAKUL KARKARE, M.D.

12   DATE:           Wednesday, August 28, 2024

13   TIME:           12:06 p.m.

14   LOCATION:       Remote Proceeding

15                   2500 Nesconset Highway

16                   Stony Brook, NY 11790

17   REPORTED BY:    Paul Chamberlain

18   JOB NO.:        6869664

19

20

21

22

23

24

25

```
                                                        Page 2

1                    A P P E A R A N C E S

2      ON BEHALF OF PLAINTIFF AA MEDICAL, P.C.:

3            RYAN MILUN, ESQUIRE (by videoconference)

4            The Milun Law Firm, LLC

5            20 Commerce Drive, Suite 135

6            Cranford, NJ 07016

7            ryan.milun@milunlaw.com

8            862-702-5010

9

10     ON BEHALF OF DEFENDANT IRON WORKERS LOCALS 40, 361 &

11     417 HEALTH FUND:

12            THOMAS KEANE, ESQUIRE (by videoconference)

13            Colleran, O'Hara & Mills, LLP

14            100 Crossways Park Drive West, Suite 200

15            Woodbury, NY 11797

16            tpk@cohmlaw.com

17            516-248-5757

18

19

20

21

22

23

24

25
```

Page 3

1                          I N D E X

2    EXAMINATION:                                    PAGE

3         By Mr. Keane                                 6

4

5                         E X H I B I T S

6    NO.              DESCRIPTION                    PAGE

7                       (None marked.)

8

9              D O C U M E N T S   R E Q U E S T E D

10   NO.              DESCRIPTION                    PAGE

11   1                Record showing how the

12                    appeal form, dated

13                    12/15/2021, was sent to

14                    the insurance company          22

15   2                Record showing how the bill,

16                    dated 9/28/2021, was sent to

17                    the appeal department           26

18

19

20

21

22

23

24

25

                                    Page 4

1                          N. KARKARE

2              THE REPORTER:  Good afternoon.  My

3        name is Paul Chamberlain; I am the

4        reporter assigned by Veritext to take the

5        record of this proceeding.  We are now on

6        the record at 12:06 p.m.

7              This is the deposition of Nakul

8        Karkare taken in the matter of AA Medical,

9        P.C. against Iron Workers Locals 40, 361,

10       and 417 Health Fund on August 28, 2024.

11             I am a notary authorized to take

12       acknowledgments and administer oaths in

13       New York.  Parties agree that I will swear

14       in the witness remotely outside of his

15       presence.

16             Additionally, absent an objection on

17       the record before the witness is sworn,

18       all parties and the witness understand and

19       agree that any certified transcript

20       produced from the recording virtually of

21       this proceeding:

22             - is intended for all uses permitted

23       under applicable procedural and

24       evidentiary rules and laws in the same

25       manner as a deposition recorded by

                                                          Page 5

1                        N.  KARKARE

2        stenographic means; and

3             - shall constitute written

4        stipulation of such.

5             At this time will everyone in

6        attendance please identify yourself for

7        the record, beginning with Plaintiff's

8        counsel.

9             MR. MILUN:  Ryan Milun, The Milun Law

10       Firm, for the plaintiff.

11            MR. KEANE:  Tom Keane, Colleran,

12       O'Hara & Mills, for the defendant.

13            THE REPORTER:  And --

14            DR. KARKARE:  And you got me.  Nakul

15       Karkare.  I'm the owner of AA Medical,

16       P.C.

17            THE REPORTER:  Thank you.  And will

18       you please state your address for the

19       record?

20            DR. KARKARE:  Sure.  My address is

21       2500 Nesconset Highway, Stony Brook, New

22       York.  Let's see.  The ZIP Code there is

23       11790.

24            THE REPORTER:  Thank you.  Hearing no

25       objection, I will now swear in the

```
                                              Page 6

 1                      N. KARKARE

 2        witness.  Please raise your right hand.

 3   WHEREUPON,

 4              NAKUL KARKARE, M.D.,

 5   called as a witness and having been first

 6   duly sworn to tell the truth, the whole

 7   truth, and nothing but the truth, was

 8   examined and testified as follows:

 9              THE REPORTER:  Thank you.  You may

10       proceed.

11           MR. KEANE:  All right.  Thank you.

12                   EXAMINATION

13   BY MR. KEANE:

14       Q    Dr. Karkare, my name's Tom

15   Keane.  I'm the attorney for the

16   defendant, the Iron Workers Local 40, 361,

17   and 417 Health Fund.

18       A    Hello.

19       Q    Hello.  I have some questions

20   for you today.  Hopefully, we'll be able

21   to move through this relatively quickly.

22   So before we get started, is anyone else

23   in the room with you?

24       A    No.

25       Q    Okay.  Now, have you ever been
```

```
                                        Page 7

 1                      N.  KARKARE

 2   deposed before, Dr. Karkare?

 3        A    Yes, for workers' compensation

 4   as a witness.  I am the treating doctor

 5   for numerous patients who have workers'

 6   compensation insurance, and I do get

 7   deposed for those cases.

 8        Q    So I'm just going to go over

 9   some instructions with you.  And I do want

10   to make sure -- am I pronouncing your last

11   name correctly, sir?

12        A    The beauty about my last name is

13   whichever way you say it, it's right.  So

14   it's good.

15        Q    Well, I -- if I do mispronounce

16   your name, please tell me.

17        A    Right.

18        Q    I want to show you that

19   courtesy.

20        A    No.  It's fine.  It's Karkare.

21        Q    Karkare?

22        A    Karkare.  Like a car.  Karkare.

23        Q    Okay.  Thank you.  So all of

24   your answers today need to be verbal.

25   Only one person should be speaking at a
```

```
                                    Page 8

 1                    N. KARKARE
 2   time.  I'll ask that you wait until I
 3   finish asking the question before you
 4   answer, and I will extend that same
 5   courtesy to you.
 6        A    Okay.
 7        Q    If, for whatever reason, you
 8   need to take a break today -- use the
 9   bathroom, stretch your legs -- that's
10   fine.  All I would ask is that you answer
11   any pending questions before you take the
12   break.
13        A    Got it.
14        Q    I'd ask that if you don't
15   understand a question that you tell me
16   that you don't understand the question,
17   and I'll try to rephrase it to make it
18   clearer.
19        A    Got it.
20        Q    Did you review any documents
21   before today's deposition?
22        A    Yeah.  I reviewed the clinicals.
23        Q    Any other documents?
24        A    That's it.
25        Q    Did you speak with anyone, other
```

Page 9

1                          N.  KARKARE

2    than your attorney, about this deposition?

3         A    No.

4         Q    All right.  So where are you

5    currently employed?

6         A    I am employed by my own

7    practice, AA Medical, P.C.  I'm the owner

8    of the business.

9         Q    And how long have you owned AA

10   Medical?

11        A    Since 2012.

12        Q    All right.  And you're aware

13   that AA Medical filed the lawsuit against

14   my client, the Iron Workers Health Fund?

15        A    Yes.

16        Q    And for ease -- for just ease of

17   the conversation, if I refer to "the

18   Health Fund," I'm referring to the Iron

19   Workers Local 43, 361, and 417 Health

20   Fund.

21        A    Okay.

22        Q    Does that make sense to you?

23        A    Got it.

24        Q    Thank you.  All right.  So are

25   you familiar with the date of service --

```
                                           Page 10
 1                      N. KARKARE
 2   or the service that's at issue in this
 3   lawsuit?
 4        A    Yeah.  I have the clinicals.  I
 5   can pull them up, if you like.
 6        Q    We might get into that, but --
 7        A    Okay.
 8        Q    Do you know when the date of
 9   service was for this?
10        A    I'll have to look.  If you want
11   me to look, I can tell you.
12        Q    Well, so generally, I want you
13   to testify as to what you recall.  I may
14   put some documents on the screen, or as we
15   go through the deposition, but I'd
16   rather -- if you don't remember, or you're
17   not sure, I'd rather you tell me that.
18        A    Right.  I -- I -- my
19   recollection -- I don't want to rely on
20   that.  I can read the documents to you.  I
21   am not the surgeon who treated the
22   patient, for the record.  So whatever I do
23   today will be based on the documents.
24        Q    Okay.  Then why don't we do
25   this.  I'm going to put -- can we just go
```

Page 11

1                          N. KARKARE

2   off the record for a second?

3                THE REPORTER:  Sure.  Off the record,

4        12:13.

5                (Off the record.)

6                THE REPORTER:  Back on the record,

7        12:13.

8   BY MR. KEANE:

9        Q    All right.  So I'm putting on

10  the screen now -- Dr. Karkare, can you

11  confirm that you can see this?

12       A    Yes.  Yeah.  Very clear.

13       Q    All right.  Thank you.  Do you

14  need me to zoom in at all?

15       A    No.  I can read.

16       Q    I'll zoom in a little just to

17  make it easier.

18       A    Okay.  Thank you.

19       Q    So when you said you reviewed

20  "the clinicals," is this the sort of

21  document that you were reviewing?

22       A    I reviewed the chart, so this

23  gets placed into the chart, and this is

24  the intake.

25       Q    Okay.  This is the intake.

```
                                            Page 12

 1                      N. KARKARE

 2        A     Mm-hmm.

 3        Q     This is still the intake?

 4        A     Yeah.

 5        Q     Okay.  Now this is -- these are

 6   documents that were provided by your

 7   attorneys in response to discovery

 8   demand --

 9        A     Okay.

10        Q     -- from my office.

11        A     Okay.

12        Q     So I'm just scrolling through to

13   where I think the chart is --

14        A     Okay.

15        Q     -- but bear with me for a

16   moment.

17        A     Okay.

18        Q     This all appears to still be the

19   intake form?

20        A     Yeah.

21        Q     Thank you.  Now, this document

22   here -- gesundheit.  Do you need a moment,

23   sir?

24        A     No.  I'm good.

25        Q     Okay.  Now, this document here,
```

```
                                          Page 13

 1                   N.  KARKARE

 2    the "Self-Insurance Claim Form," we'll get

 3    to it.   But this is not part of the chart;

 4    correct?

 5        A     That's right.

 6        Q     All right.   So here on the 13th

 7    page of the production -- St. Catherine of

 8    Siena Medical Center -- is this the chart?

 9        A     Yes.

10        Q     Okay.

11        A     It's the operative report, just

12    like it says.

13        Q     So the date of this procedure,

14    can you just confirm what the date of the

15    procedure was?

16        A     Yeah; 6/16/2021.

17        Q     Thank you.   And what was the

18    procedure here?

19        A     It says it's left knee medial

20    meniscus root repair, along with a left

21    knee lateral meniscus repair, along with

22    left knee microfracture chondroplasty.

23        Q     All right.   And can you just

24    describe to me, in layman terms, what that

25    means?
```

Page 14

N. KARKARE

1

2        A    Sure.  It means that Dr. Vaksha

3    repaired the cushion between the two bones

4    on the inside of the knee and outside of

5    the knee.  What he also did was create a

6    small opening in the bone to get out the

7    stem cells to help in healing of whatever

8    he did.

9        Q    All right.  Thank you.  And

10   is -- this is the procedure that AA

11   Medical filed a lawsuit over?  Is that

12   correct?

13       A    I believe so.

14       Q    Okay.  Did AA Medical have to

15   get preapproval for this procedure from

16   the patient's insurance company?

17       A    We get a preapproval for all our

18   elective cases, so I'm sure we get -- got

19   a preapproval for this one too.  I'll have

20   to look in the chart to see what date and

21   what number.  But as -- as a procedure, we

22   always get a preapproval for all elective

23   cases.  Without that, the hospital does

24   not authorize the procedure.  We do not do

25   the procedure -- cannot do the procedure

```
                                        Page 15
 1                   N. KARKARE
 2    without that.
 3         Q    So that's -- St. Catherine
 4    wouldn't have allowed the surgeon to
 5    perform without preapproval?
 6         A    That's right.
 7         Q    And you said that AA Medical
 8    gets preapproval for all elective
 9    procedures?
10         A    That's correct.
11         Q    So this procedure on June 16,
12    2021, that was elective?
13         A    Yes.
14         Q    Okay.  And so when you went --
15    when AA Medical goes for preapproval, is
16    that -- to whom is that directed towards?
17    Who do they make that request to?
18         A    To the insurance company.
19         Q    And this patient, do you know
20    who his insurance company was?
21         A    I'll have to look it up, but I'm
22    guessing probably the Health Fund that we
23    are talking about today.
24         Q    Do you know for sure?
25         A    I will have to look it up.
```

```
                                        Page 16

 1                       N. KARKARE

 2       Q     Okay.  Well, how does AA Medical

 3   determine who the patient's insurance

 4   provider is?

 5       A     Oh.  Well, we get the insurance

 6   information from the patient, and then we

 7   contact the insurance company, do

 8   eligibility verification, and put it in

 9   the chart.

10       Q     So is AA Medical requesting

11   copies of the patient's insurance card?

12       A     Yeah.  We do that when the

13   patient comes to the office.

14       Q     Is there any other information

15   that you request from the -- that AA

16   Medical requests from the patients in

17   order to determine who their insurance

18   company is?

19       A     No.  The insurance company

20   member ID and the insurance company name.

21   That's it.

22       Q     And so before this surgery could

23   have taken place on June 16, 2021, AA

24   Medical would have had to contact the

25   patient's insurance company and get
```

                         N. KARKARE
1
2    preapproval for these operations?
3         A    Like I said before, yes.
4         Q    I'm going to stop the screen
5    share.  I may come back to it later, but I
6    don't need it for right now.
7              So to your knowledge, does AA --
8    has AA Medical had patients covered by the
9    Iron Workers Health Fund before?
10        A    Probably.  I'll have to run a
11   report.  Then I can tell you.
12        Q    When you say "run a report,"
13   what do you mean by that?
14        A    Run a report of insurances and
15   tell which patients were treated by which
16   insurance company by us.
17        Q    All right.  So has AA Medical
18   ever submitted a claim -- are you aware of
19   AA Medical submitting claims to the Iron
20   Workers Health Fund before?
21        A    We probably did, if we saw the
22   patient.
23        Q    Are you personally familiar with
24   any claims that have been submitted to the
25   Iron Workers Health Fund?

```
                                          Page 18

                        N. KARKARE

 1

 2        A     No.  I'll have to run a report,

 3   like I said before.

 4        Q     Okay.  So I want to take a step

 5   back.  So when AA Medical performed -- no.

 6   Actually, let me confirm this.  I know you

 7   were not the treating physician on June

 8   16, 2021.  Who was the treating physician?

 9        A     Dr. Vedant Vaksha.

10        Q     And he is an employee of AA

11   Medical?

12        A     That's right.

13        Q     All right.  Thank you.  So when

14   AA Medical performs an elective surgery,

15   like the one -- like this one, who

16   generates the bill that -- who generates

17   the bill?

18        A     Well, the billing department.

19        Q     And who -- does anyone have to

20   approve that bill before it gets sent out?

21        A     Yes.

22        Q     Who has to approve the bill?

23        A     The surgeon submits the codes.

24   The surgeon approves the codes.  The

25   billing department sends out the bill.
```

Page 19

                              N. KARKARE

1

2       Q    And how soon after a surgery is

3   performed does the bill go out, generally?

4       A    Base, two weeks.

5       Q    Is that an automated process, or

6   is somebody in the billing department

7   manually doing this work?

8       A    Manually doing this work.

9       Q    And do you know how the billing

10   department sends the bill?  Are they

11   mailing it, faxing it?  Do you know?

12       A    It's sent electronically to the

13   clearing house, unless there are some

14   insurance which don't accept electronic

15   claims there.  Then we -- the claims to

16   paper and send it.  And a electronic

17   medical record company does that for us.

18       Q    What's the name of that company?

19       A    We currently use Athena.

20       Q    Is that A-T-H-E-N-A?

21       A    Correct.  You're very good at

22   understanding my accent, I must say.

23       Q    Well, thank you.  I think you're

24   pretty clear, for what it's worth.

25       A    All right.

```
                                              Page 20
 1                      N. KARKARE
 2        Q      So bear with me just one moment.
 3   I'll just share my screen again.  All
 4   right.  Can you see this?
 5        A      Yep.
 6        Q      This is on page 12 of
 7   Plaintiff's document production.  Dr.
 8   Karkare, is this the bill?
 9        A      Yeah.
10        Q      Okay.  And I see -- it says
11   "Signature on File."  That's just the
12   patient's signature that you have on file;
13   correct?
14        A      "Patient's authorized" -- yeah.
15   That's what it reads there, so that's what
16   I would assume.
17        Q      Now, did you personally see this
18   bill before it went out?
19        A      No.  I -- I don't see every bill
20   that goes out.
21        Q      Okay.
22        A      The surgeon reviews the codes.
23   The billing department sends out those
24   codes.
25        Q      All right.  And do you know if
```

```
                                    Page 21
  1                    N. KARKARE
  2   AA Medical got paid on this bill?
  3        A    I'll have to look up the amount,
  4   and if I got paid, and on which code.
  5        Q    Okay.  Let's scroll up to --
  6   this is page 10 of the document
  7   production.  Are you familiar with this
  8   document, sir?
  9        A    Yeah.
 10        Q    Okay.  What is this document?
 11        A    This looks like appeal form sent
 12   by Donna Aiello, our billing
 13   administrator.
 14        Q    All right.  Do you know how
 15   Donna Aiello would have sent this?
 16        A    Probably, as I said, you know,
 17   electronically faxed it, or if the
 18   insurance company doesn't accept
 19   electronic faxes, we could have mailed it
 20   to the insurance company.  Again, like I
 21   said, I will have to look up exactly how
 22   it was sent.
 23        Q    So AA Medical would have some
 24   sort of a record of how they sent this
 25   particular bill?
```

```
                                            Page 22

 1                      N. KARKARE

 2        A     Absolutely.

 3        Q     All right.  I am going to make a

 4   request for whatever that record is that

 5   would show how this was sent.

 6        A     Okay.

 7        Q     I'll follow up with your

 8   attorney on that.

 9        A     Okay.  All right.

10        Q     Now, so this document that we're

11   looking at -- was this something that you

12   would have seen before it went out?

13        A     No.

14        Q     Okay.  And I see that it was

15   addressed "Attention: Iron Workers Claim

16   Department."  Do you have any -- are you

17   personally familiar with the claim

18   department at the Iron Workers Health

19   Fund?

20        A     No.

21        Q     Is there anyone who works for AA

22   Medical who would know, who would have

23   that familiarity?

24        A     I mean, our billing team would

25   know more about the claim department and,
```

Page 23

                              N. KARKARE
1
2    you know, which fax number it was sent to,
3    or was it mailed, or how it came to you.
4         Q    So would Donna Aiello have
5    personal knowledge as to how a claim like
6    this was sent out?
7         A    Yeah.
8         Q    Do you know if AA Medical
9    received any response to this
10   communication?
11        A    Again, like I said, I'll have to
12   look at the records.  For the record,
13   going forward, anything that I don't see
14   on the screen, I will have to look up,
15   like I said before.
16        Q    Well, so then, I'll ask this
17   sort of generally.  Do you have any
18   personal knowledge, generally, about bills
19   that go out and the communications with
20   the insurance companies?
21        A    I'm the one who set the
22   protocols.  Do I review every bill, every
23   claim that goes out?  No.  I cannot do
24   that.
25        Q    All right.  So you generally

```
                                                Page 24
 1                          N.  KARKARE
 2    know  what  the  protocols  are  for  getting
 3    the  bills  out,  but  --
 4         A    Correct.   Yeah.
 5         Q    --  but  for  these  bills,  you
 6    don't  have  any  recollection  of  seeing
 7    them?
 8         A    No.   Like  I  said,  it's
 9    impossible  for  me  to  see  every  claim  that
10    goes  out.   I'm  a  practicing  orthopedic
11    surgeon,  and  we  have  a  billing  team  who
12    sends  out  the  --  virtual  connectivity
13    interruption  --
14         Q    I'm  just  going  to  move  to  page
15    17  of  the  document  production.   All  right.
16    Can  you  see  this?
17         A    Yeah.
18         Q    So  tell  me,  if  you  know,  what
19    this  document  is?
20         A    I'm  just  moving  the  screen  a
21    little  away  so,  you  know,  the  camera  may
22    be  pointing  a  little  upward.   "Records
23    indicate  that  claims  for  the  --  were
24    underpaid.   We're  requesting  that  you  send
25    the  plan  documents."   Yeah.   So  just  like
```

                                                      Page 25

 1                      N. KARKARE

 2     it says, "we are requesting the plan

 3     documents, and we are also appealing this

 4     claim."

 5          Q    All right.  Now, I note that

 6     this is dated September 28, 2021.  And the

 7     last document we looked at on page 10 of

 8     the production is dated December 15, 2021.

 9          A    Okay.

10          Q    Do you know why -- do you know

11     why the earlier document is addressed to

12     the appeal department and the later

13     document is addressed to the claims

14     department?

15          A    No.  I don't know.  But a

16     possibility is that the insurance company

17     asked us to do that.

18          Q    And I see on the top here -- and

19     I'll highlight it -- a fax number.  Is

20     that -- do you know what that fax number

21     is?

22          A    No.  The fax number on this

23     appeal; that's all I know.

24          Q    Okay.  So is that AA Medical's

25     fax number?

```
                                                Page 26
 1                       N. KARKARE
 2        A      No.  No.  Our fax number is
 3   below.
 4        Q      Is that the 212 number here?
 5        A      Correct.
 6        Q      Thank you.  And -- sorry.  Do
 7   you have any personal knowledge as to how
 8   this bill was sent to the appeal
 9   department?
10        A      No.  Like I said before, I'll
11   have to look it up.  Looking at this, it
12   may have been faxed, but I'm not sure.
13        Q      All right.  I'm going to request
14   a copy of whatever record would show how
15   this was sent to the health -- sent to the
16   appeal department.
17        A      Okay.
18        Q      So I see that in this document,
19   AA Medical claims that it was underpaid.
20   When AA Medical believes that a claim is
21   underpaid, do you -- what does AA -- does
22   AA Medical send any sort of documentation
23   to support what they claim they should be
24   paid?
25        A      The billed amount is clearly
```

1                    N. KARKARE

2   mentioned in the submitted claim.  Any

3   amount less than the billed amount is

4   underpayment.

5        Q    Do you know if AA Medical

6   receives an explanation of benefits from

7   the Health Fund?

8        A    Did they receive an explanation

9   of benefits?  I would have to look at the

10  chart if they did.

11       Q    Do you know, is AA Medical an

12  in-network healthcare provider for the

13  Health Fund?

14       A    We are out-of-network provider.

15       Q    If AA Medical is underpaid, does

16  the billing department get you involved

17  with the appeal?

18       A    No.  No.

19       Q    Other than setting up the

20  protocols, do you have any direct

21  involvement with the billing process for

22  AA Medical?

23       A    I personally order charts

24  occasionally to make sure everything is

25  exactly the way it should be.

Page 28

```
 1                    N. KARKARE
 2        Q    And are you -- so are you
 3    auditing the process, or you're auditing
 4    particular bills?
 5        A    Everything.
 6        Q    I'm sorry.  Did you say
 7    "everything"?
 8        A    Yes.
 9        Q    Okay.  And if an insurance
10    company denies a claim, are you personally
11    involved with AA Medical's appeal of the
12    denied claim?
13        A    Like I said, no; not for every
14    appeal that goes out.
15        Q    And for the service at issue in
16    this case that was performed on June 16,
17    2021, you weren't involved with the
18    billing of that procedure; correct?
19        A    That's right.
20        Q    And you weren't involved with
21    the appeal of the denial of claims?
22        A    Yeah.  Like I said before, I
23    wasn't involved in that.
24        Q    And is Donna Aiello -- is she
25    the person who would have the -- I'll
```

```
                                      Page 29

 1                    N.  KARKARE

 2    strike the question.   The form I'm looking

 3    at identifies Donna Aiello as the billing

 4    administrator.   Is she still AA Medical's

 5    billing administrator?

 6         A    Yes; she is.

 7         Q    Okay.  And is Ms. Aiello

 8    personally involved with getting the bills

 9    out and submitting appeals?

10         A    There's somebody who submits the

11    bills, but she follows up on them, and

12    she's in charge of the appeals.

13         Q    Would Ms. Aiello -- is Ms.

14    Aiello likely to have knowledge as to

15    how -- whether or not AA Medical appealed

16    this denial of claims?

17         A    Yeah.  Absolutely.

18         Q    Okay.

19         A    I mean, what I see here is that

20    she's the one who appealed it.

21              MR. KEANE:  Can we go off the record

22         for a second?

23              THE REPORTER:  Sure thing.  Off the

24         record, 12:41.

25              (Off the record.)
```

```
                                            Page 30

1                     N. KARKARE

2            THE REPORTER:  Back on the record,

3       1:01 p.m.

4            MR. KEANE:  Thank you.

5   BY MR. KEANE:

6       Q    All right.  So I have a couple

7   of questions.  I do just want to state

8   that I will be following up with your

9   attorney, Dr. Karkare, regarding some

10  information requests for some records you

11  referenced, you know, and the Defendant

12  reserves their right to call Donna Aiello

13  as a witness.

14            You know, as I had mentioned in

15  the -- during the conference before the

16  magistrate on July 31st, the Health Fund

17  was most interested in speaking with

18  someone who had personal knowledge of the

19  appeal that was filed by AA Medical.  So

20  we reserve our right to call an additional

21  witness with more knowledge than you about

22  that.  But we'll see what those -- what

23  the records produced say.

24            So just a couple of final -- a

25  couple of, hopefully, quick questions for
```

```
                                              Page 31
 1                    N. KARKARE
 2   you, Dr. Karkare.
 3        A     Sure.
 4        Q     Are you familiar with the
 5   Journal of Arthroscopy?
 6        A     Yeah.
 7        Q     Okay.  Are you aware that in an
 8   amended complaint in this case your prior
 9   attorney cited a few -- a couple of
10   articles from the Journal of Arthroscopy?
11        A     I know they cited some
12   scientific literature.
13        Q     Okay.  Are you aware of what
14   those -- what that literature was?
15        A     I would have to look up the
16   literature that was submitted.
17        Q     And to your knowledge, was any
18   of that literature ever submitted to the
19   Health Fund?
20        A     I'll have to look it up.
21        Q     Okay.  Are you aware that your
22   attorneys, in responding to discovery,
23   have already said that literature was
24   never submitted to the Health Fund?
25        A     I'll have to look it up.
```

Page 32

                    N. KARKARE

1

2       Q     Okay.

3       A     What I can tell you, as a

4    protocolist -- they ask for something, we

5    do submit it.  If it were asked, it would

6    have been submitted.

7       Q     All right.  Thank you.  And are

8    you familiar with any other lawsuits that

9    AA Medical has filed against my client in

10   the past?

11      A     I'll have to look it up.

12            MR. KEANE:  Thank you.  No further

13        questions.

14            THE WITNESS:  Thank you.

15            MR. MILUN:  I don't have any

16        questions.

17            THE REPORTER:  All right.  We're off

18        the record at 1:04 p.m.

19            (Time Noted:  1:04 p.m.0

20

21        _____

                   NAKUL KARKARE, M.D.

22        Subscribed and sworn to before me

23

          this _____ day of _____, 2024.

24

25        _____, Notary Public

Page 33

1           CERTIFICATE OF DEPOSITION OFFICER

2               I, PAUL CHAMBERLAIN, the officer before whom the

3    foregoing proceedings were taken, do hereby certify that

4    any witness(es) in the foregoing proceedings, prior to

5    testifying, were duly sworn; that the proceedings were

6    recorded by me and thereafter reduced to typewriting by a

7    qualified transcriptionist; that said digital audio

8    recording of said proceedings are a true and accurate

9    record to the best of my knowledge, skills, and ability;

10   that I am neither counsel for, related to, nor employed by

11   any of the parties to the action in which this was taken;

12   and, further, that I am not a relative or employee of any

13   counsel or attorney employed by the parties hereto, nor

14   financially or otherwise interested in the outcome of this

15   action.

16

17

18

19

        PAUL CHAMBERLAIN

20      Notary Public in and for the

        State of New York

21   [X] Review of the transcript was requested.

22

23

24

25

Page 34

1                    CERTIFICATE OF TRANSCRIBER

2            I, ROCHELLE RANKIN, do hereby certify that this

3    transcript was prepared from the digital audio recording of

4    the foregoing proceeding, that said transcript is a true

5    and accurate record of the proceedings to the best of my

6    knowledge, skills, and ability; that I am neither counsel

7    for, related to, nor employed by any of the parties to the

8    action in which this was taken; and, further, that I am not

9    a relative or employee of any counsel or attorney employed

10   by the parties hereto, nor financially or otherwise

11   interested in the outcome of this action.

12

13

14

15   *Rochelle R. Rankin*

16    ROCHELLE RANKIN

17

18

19

20

21

22

23

24

25

Page 35

1
2                   ERRATA SHEET
          VERITEXT/NEW YORK REPORTING, LLC
3      CASE NAME: AA Medical, P.C. v.
       Iron Workers Local 40, 361 & 417 Health Fund
4      DATE OF DEPOSITION:  August 28, 2024
       WITNESS' NAME: Nakul Karkare, M.D.
5
       PAGE/LINE(s)/      CHANGE            REASON
6      ____/_____/_____/_____
       ____/_____/_____/_____
7      ____/_____/_____/_____
       ____/_____/_____/_____
8      ____/_____/_____/_____
       ____/_____/_____/_____
9      ____/_____/_____/_____
       ____/_____/_____/_____
10     ____/_____/_____/_____
       ____/_____/_____/_____
11     ____/_____/_____/_____
       ____/_____/_____/_____
12     ____/_____/_____/_____
       ____/_____/_____/_____
13     ____/_____/_____/_____
       ____/_____/_____/_____
14     ____/_____/_____/_____
       ____/_____/_____/_____
15     ____/_____/_____/_____
       ____/_____/_____/_____
16     ____/_____/_____/_____
       ____/_____/_____/_____
17     ____/_____/_____/_____
       ____/_____/_____/_____
18     ____/_____/_____/_____
19
20              _____
                  NAKUL KARKARE, M.D.
21
       Subscribed and Sworn To
22     Before Me This_____Day
       of_____, 20  .
23
       _____
24        Notary Public
25     My Commission Expires_____

| & | |
|---|---|
| **&**   1:7 2:10,13 5:12 35:3 | |

| 0 | |
|---|---|
| **01249**   1:8 | |
| **07016**   2:6 | |

| 1 | |
|---|---|
| **1**   3:11 | |
| **10**   21:6 25:7 | |
| **100**   2:14 | |
| **11790**   1:16 5:23 | |
| **11797**   2:15 | |
| **12**   20:6 | |
| **12/15/2021**   3:13 | |
| **12:06**   1:13 4:6 | |
| **12:13**   11:4,7 | |
| **12:41**   29:24 | |
| **135**   2:5 | |
| **13th**   13:6 | |
| **15**   25:8 | |
| **16**   15:11 16:23 18:8 28:16 | |
| **17**   24:15 | |
| **1:01**   30:3 | |
| **1:04**   32:18,19 | |

| 2 | |
|---|---|
| **2**   3:15 | |
| **20**   2:5 35:22 | |
| **200**   2:14 | |
| **2012**   9:11 | |
| **2021**   15:12 16:23 18:8 | |

25:6,8 28:17
**2024**   1:12 4:10 32:23 35:4
**212**   26:4
**22**   3:14
**2500**   1:15 5:21
**26**   3:17
**26358**   34:15
**26503**   33:19
**28**   1:12 4:10 25:6 35:4
**2:22**   1:7

| 3 | |
|---|---|
| **31st**   30:16 | |
| **361**   1:7 2:10 4:9 6:16 9:19 35:3 | |

| 4 | |
|---|---|
| **40**   1:7 2:10 4:9 6:16 35:3 | |
| **417**   1:7 2:11 4:10 6:17 9:19 35:3 | |
| **43**   9:19 | |

| 5 | |
|---|---|
| **516-248-5757**   2:17 | |

| 6 | |
|---|---|
| **6**   3:3 | |
| **6/16/2021**   13:16 | |
| **6869664**   1:18 | |

| 8 | |
|---|---|
| **862-702-5010**   2:8 | |

| 9 | |
|---|---|
| **9/28/2021**   3:16 | |

| a | |
|---|---|
| **aa**   1:4 2:4 4:8 5:15 9:7,9,13 14:10,14 15:7 15:15 16:2,10 16:15,23 17:7 17:8,17,19 18:5,10,14 21:2,23 22:21 23:8 25:24 26:19,20,21,22 27:5,11,15,22 28:11 29:4,15 30:19 32:9 35:3 | |
| **ability**   33:9 34:6 | |
| **able**   6:20 | |
| **absent**   4:16 | |
| **absolutely**   22:2 29:17 | |
| **accent**   19:22 | |
| **accept**   19:14 21:18 | |
| **accurate**   33:8 34:5 | |
| **acknowledg...**   4:12 | |

| action   33:11,15 34:8,11 |
|---|
| **actually**   18:6 |
| **additional**   30:20 |
| **additionally**   4:16 |
| **address**   5:18,20 |
| **addressed**   22:15 25:11,13 |
| **administer**   4:12 |
| **administrator**   21:13 29:4,5 |
| **afternoon**   4:2 |
| **agree**   4:13,19 |
| **aiello**   21:12,15 23:4 28:24 29:3,7,13,14 30:12 |
| **allowed**   15:4 |
| **amended**   31:8 |
| **amount**   21:3 26:25 27:3,3 |
| **answer**   8:4,10 |
| **answers**   7:24 |
| **appeal**   3:12,17 21:11 25:12,23 26:8,16 27:17 28:11,14,21 30:19 |
| **appealed**   29:15 29:20 |
| **appealing**   25:3 |

appeals  29:9,12
appears  12:18
applicable  4:23
approve  18:20
  18:22
approves  18:24
arthroscopy
  31:5,10
articles  31:10
asked  25:17
  32:5
asking  8:3
assigned  4:4
assume  20:16
athena  19:19
attendance  5:6
attention  22:15
attorney  6:15
  9:2 22:8 30:9
  31:9 33:13
  34:9
attorneys  12:7
  31:22
audio  33:7 34:3
auditing  28:3,3
august  1:12
  4:10 35:4
authorize
  14:24
authorized
  4:11 20:14
automated
  19:5
aware  9:12
  17:18 31:7,13

31:21

**b**

b  3:5
back  11:6 17:5
  18:5 30:2
base  19:4
based  10:23
bathroom  8:9
bear  12:15 20:2
beauty  7:12
beginning  5:7
behalf  2:2,10
believe  14:13
believes  26:20
benefits  27:6,9
best  33:9 34:5
bill  3:15 18:16
  18:17,20,22,25
  19:3,10 20:8
  20:18,19 21:2
  21:25 23:22
  26:8
billed  26:25
  27:3
billing  18:18,25
  19:6,9 20:23
  21:12 22:24
  24:11 27:16,21
  28:18 29:3,5
bills  23:18 24:3
  24:5 28:4 29:8
  29:11
bone  14:6
bones  14:3

break  8:8,12
brook  1:16
  5:21
business  9:8

**c**

c  2:1 3:9
call  30:12,20
called  6:5
camera  24:21
car  7:22
card  16:11
case  1:6 28:16
  31:8 35:3
cases  7:7 14:18
  14:23
catherine  13:7
  15:3
cells  14:7
center  13:8
certificate  33:1
  34:1
certified  4:19
certify  33:3
  34:2
chamberlain
  1:17 4:3 33:2
  33:19
change  35:5
charge  29:12
chart  11:22,23
  12:13 13:3,8
  14:20 16:9
  27:10
charts  27:23

chondroplasty
  13:22
cited  31:9,11
claim  13:2
  17:18 22:15,17
  22:25 23:5,23
  24:9 25:4
  26:20,23 27:2
  28:10,12
claims  17:19,24
  19:15,15 24:23
  25:13 26:19
  28:21 29:16
clear  11:12
  19:24
clearer  8:18
clearing  19:13
clearly  26:25
client  9:14 32:9
clinicals  8:22
  10:4 11:20
code  5:22 21:4
codes  18:23,24
  20:22,24
cohmlaw.com
  2:16
colleran  2:13
  5:11
come  17:5
comes  16:13
commerce  2:5
commission
  35:25
communication
  23:10

communicati... 23:19
companies 23:20
company 3:14 14:16 15:18,20 16:7,18,19,20 16:25 17:16 19:17,18 21:18 21:20 25:16 28:10
compensation 7:3,6
complaint 31:8
conference 30:15
confirm 11:11 13:14 18:6
connectivity 24:12
constitute 5:3
contact 16:7,24
conversation 9:17
copies 16:11
copy 26:14
correct 13:4 14:12 15:10 19:21 20:13 24:4 26:5 28:18
correctly 7:11
counsel 5:8 33:10,13 34:6 34:9

couple 30:6,24 30:25 31:9
court 1:1
courtesy 7:19 8:5
covered 17:8
cranford 2:6
create 14:5
crossways 2:14
currently 9:5 19:19
cushion 14:3
cv 1:7

**d**

d 3:1,9,9
date 1:12 9:25 10:8 13:13,14 14:20 35:4
dated 3:12,16 25:6,8
day 32:23 35:22
december 25:8
defendant 1:9 2:10 5:12 6:16 30:11
demand 12:8
denial 28:21 29:16
denied 28:12
denies 28:10
department 3:17 18:18,25 19:6,10 20:23 22:16,18,25

25:12,14 26:9 26:16 27:16
deposed 7:2,7
deposition 1:11 4:7,25 8:21 9:2 10:15 33:1 35:4
describe 13:24
description 3:6 3:10
determine 16:3 16:17
digital 33:7 34:3
direct 27:20
directed 15:16
discovery 12:7 31:22
district 1:1,2
doctor 7:4
document 11:21 12:21,25 20:7 21:6,8,10 22:10 24:15,19 25:7,11,13 26:18
documentation 26:22
documents 8:20,23 10:14 10:20,23 12:6 24:25 25:3
doing 19:7,8
donna 21:12,15 23:4 28:24

29:3 30:12
dr 5:14,20 6:14 7:2 11:10 14:2 18:9 20:7 30:9 31:2
drive 2:5,14
duly 6:6 33:5

**e**

e 2:1,1 3:1,5,9,9 3:9,9 19:20
earlier 25:11
ease 9:16,16
easier 11:17
eastern 1:2
elective 14:18 14:22 15:8,12 18:14
electronic 19:14,16 21:19
electronically 19:12 21:17
eligibility 16:8
employed 9:5,6 33:10,13 34:7 34:9
employee 18:10 33:12 34:9
env 1:9
errata 35:2
es 33:4
esquire 2:3,12
evidentiary 4:24
exactly 21:21 27:25

**examination**
3:2 6:12
**examined** 6:8
**expires** 35:25
**explanation**
27:6,8
**extend** 8:4

**f**

**familiar** 9:25
17:23 21:7
22:17 31:4
32:8
**familiarity**
22:23
**fax** 23:2 25:19
25:20,22,25
26:2
**faxed** 21:17
26:12
**faxes** 21:19
**faxing** 19:11
**file** 20:11,12
**filed** 9:13 14:11
30:19 32:9
**final** 30:24
**financially**
33:14 34:10
**fine** 7:20 8:10
**finish** 8:3
**firm** 2:4 5:10
**first** 6:5
**follow** 22:7
**following** 30:8
**follows** 6:8
29:11

**foregoing** 33:3
33:4 34:4
**form** 3:12
12:19 13:2
21:11 29:2
**forward** 23:13
**fund** 1:8 2:11
4:10 6:17 9:14
9:18,20 15:22
17:9,20,25
22:19 27:7,13
30:16 31:19,24
35:3
**further** 32:12
33:12 34:8

**g**

**generally** 10:12
19:3 23:17,18
23:25
**generates**
18:16,16
**gesundheit**
12:22
**getting** 24:2
29:8
**go** 7:8 10:15,25
19:3 23:19
29:21
**goes** 15:15
20:20 23:23
24:10 28:14
**going** 7:8 10:25
17:4 22:3
23:13 24:14
26:13

**good** 4:2 7:14
12:24 19:21
**guessing** 15:22

**h**

**h** 3:5 19:20
**hand** 6:2
**healing** 14:7
**health** 1:8 2:11
4:10 6:17 9:14
9:18,19 15:22
17:9,20,25
22:18 26:15
27:7,13 30:16
31:19,24 35:3
**healthcare**
27:12
**hearing** 5:24
**hello** 6:18,19
**help** 14:7
**hereto** 33:13
34:10
**highlight** 25:19
**highway** 1:15
5:21
**hmm** 12:2
**hopefully** 6:20
30:25
**hospital** 14:23
**house** 19:13

**i**

**identifies** 29:3
**identify** 5:6
**impossible** 24:9

**indicate** 24:23
**information**
16:6,14 30:10
**inside** 14:4
**instructions**
7:9
**insurance** 3:14
7:6 13:2 14:16
15:18,20 16:3
16:5,7,11,17,19
16:20,25 17:16
19:14 21:18,20
23:20 25:16
28:9
**insurances**
17:14
**intake** 11:24,25
12:3,19
**intended** 4:22
**interested**
30:17 33:14
34:11
**interruption**
24:13
**involved** 27:16
28:11,17,20,23
29:8
**involvement**
27:21
**iron** 1:7 2:10
4:9 6:16 9:14
9:18 17:9,19
17:25 22:15,18
35:3

**issue**  10:2
28:15

**j**

**job**  1:18
**journal**  31:5,10
**july**  30:16
**june**  15:11
16:23 18:7
28:16

**k**

**karkare**  1:11
4:1,8 5:1,14,15
5:20 6:1,4,14
7:1,2,20,21,22
7:22 8:1 9:1
10:1 11:1,10
12:1 13:1 14:1
15:1 16:1 17:1
18:1 19:1 20:1
20:8 21:1 22:1
23:1 24:1 25:1
26:1 27:1 28:1
29:1 30:1,9
31:1,2 32:1,21
35:4,20
**keane**  2:12 3:3
5:11,11 6:11
6:13,15 11:8
29:21 30:4,5
32:12
**knee**  13:19,21
13:22 14:4,5
**know**  10:8
15:19,24 18:6

19:9,11 20:25
21:14,16 22:22
22:25 23:2,8
24:2,18,21
25:10,10,15,20
25:23 27:5,11
30:11,14 31:11
**knowledge**
17:7 23:5,18
26:7 29:14
30:18,21 31:17
33:9 34:6

**l**

**lateral**  13:21
**law**  2:4 5:9
**laws**  4:24
**lawsuit**  9:13
10:3 14:11
**lawsuits**  32:8
**layman**  13:24
**left**  13:19,20,22
**legs**  8:9
**lgd**  1:9
**likely**  29:14
**line**  35:5
**literature**
31:12,14,16,18
31:23
**little**  11:16
24:21,22
**llc**  2:4 35:2
**llp**  2:13
**local**  6:16 9:19
35:3

**locals**  1:7 2:10
4:9
**location**  1:14
**long**  9:9
**look**  10:10,11
14:20 15:21,25
21:3,21 23:12
23:14 26:11
27:9 31:15,20
31:25 32:11
**looked**  25:7
**looking**  22:11
26:11 29:2
**looks**  21:11

**m**

**m**  3:9
**m.d.**  1:11 6:4
32:21 35:4,20
**magistrate**
30:16
**mailed**  21:19
23:3
**mailing**  19:11
**make**  7:10 8:17
9:22 11:17
15:17 22:3
27:24
**manner**  4:25
**manually**  19:7
19:8
**marked**  3:7
**matter**  4:8
**mean**  17:13
22:24 29:19

**means**  5:2
13:25 14:2
**medial**  13:19
**medical**  1:4 2:2
4:8 5:15 9:7,10
9:13 13:8
14:11,14 15:7
15:15 16:2,10
16:16,24 17:8
17:17,19 18:5
18:11,14 19:17
21:2,23 22:22
23:8 26:19,20
26:22 27:5,11
27:15,22 29:15
30:19 32:9
35:3
**medical's**  25:24
28:11 29:4
**member**  16:20
**meniscus**  13:20
13:21
**mentioned**  27:2
30:14
**microfracture**
13:22
**mills**  2:13 5:12
**milun**  2:3,4 5:9
5:9,9 32:15
**milunlaw.com**
2:7
**mispronounce**
7:15
**mm**  12:2

**moment** 12:16 12:22 20:2
**move** 6:21 24:14
**moving** 24:20

**n**

**n** 2:1 3:1,9 4:1 5:1 6:1 7:1 8:1 9:1 10:1 11:1 12:1 13:1 14:1 15:1 16:1 17:1 18:1 19:1,20 20:1 21:1 22:1 23:1 24:1 25:1 26:1 27:1 28:1 29:1 30:1 31:1 32:1
**nakul** 1:11 4:7 5:14 6:4 32:21 35:4,20
**name** 4:3 7:11 7:12,16 16:20 19:18 35:3,4
**name's** 6:14
**need** 7:24 8:8 11:14 12:22 17:6
**neither** 33:10 34:6
**nesconset** 1:15 5:21
**network** 27:12 27:14
**never** 31:24

**new** 1:2 4:13 5:21 33:20 35:2
**nj** 2:6
**notary** 4:11 32:25 33:20 35:24
**note** 25:5
**noted** 32:19
**number** 14:21 23:2 25:19,20 25:22,25 26:2 26:4
**numerous** 7:5
**ny** 1:16 2:15

**o**

**o** 3:9
**o'hara** 2:13 5:12
**oaths** 4:12
**objection** 4:16 5:25
**occasionally** 27:24
**office** 12:10 16:13
**officer** 33:1,2
**oh** 16:5
**okay** 6:25 7:23 8:6 9:21 10:7 10:24 11:18,25 12:5,9,11,14,17 12:25 13:10 14:14 15:14 16:2 18:4

20:10,21 21:5 21:10 22:6,9 22:14 25:9,24 26:17 28:9 29:7,18 31:7 31:13,21 32:2
**opening** 14:6
**operations** 17:2
**operative** 13:11
**order** 16:17 27:23
**orthopedic** 24:10
**outcome** 33:14 34:11
**outside** 4:14 14:4
**own** 9:6
**owned** 9:9
**owner** 5:15 9:7

**p**

**p** 2:1,1
**p.c.** 1:4 2:2 4:9 5:16 9:7 35:3
**p.m.** 1:13 4:6 30:3 32:18
**p.m.0** 32:19
**page** 3:2,6,10 13:7 20:6 21:6 24:14 25:7 35:5
**paid** 21:2,4 26:24
**paper** 19:16

**park** 2:14
**part** 13:3
**particular** 21:25 28:4
**parties** 4:13,18 33:11,13 34:7 34:10
**past** 32:10
**patient** 10:22 15:19 16:6,13 17:22
**patient's** 14:16 16:3,11,25 20:12,14
**patients** 7:5 16:16 17:8,15
**paul** 1:17 4:3 33:2,19
**pending** 8:11
**perform** 15:5
**performed** 18:5 19:3 28:16
**performs** 18:14
**permitted** 4:22
**person** 7:25 28:25
**personal** 23:5 23:18 26:7 30:18
**personally** 17:23 20:17 22:17 27:23 28:10 29:8
**physician** 18:7 18:8

**place**  16:23
**placed**  11:23
**plaintiff**  1:5 2:2
  5:10
**plaintiff's**  5:7
  20:7
**plan**  24:25 25:2
**please**  5:6,18
  6:2 7:16
**pointing**  24:22
**possibility**
  25:16
**practice**  9:7
**practicing**
  24:10
**preapproval**
  14:15,17,19,22
  15:5,8,15 17:2
**prepared**  34:3
**presence**  4:15
**pretty**  19:24
**prior**  31:8 33:4
**probably**  15:22
  17:10,21 21:16
**procedural**
  4:23
**procedure**
  13:13,15,18
  14:10,15,21,24
  14:25,25 15:11
  28:18
**procedures**
  15:9
**proceed**  6:10

**proceeding**
  1:14 4:5,21
  34:4
**proceedings**
  33:3,4,5,8 34:5
**process**  19:5
  27:21 28:3
**produced**  4:20
  30:23
**production**
  13:7 20:7 21:7
  24:15 25:8
**pronouncing**
  7:10
**protocolist**
  32:4
**protocols**  23:22
  24:2 27:20
**provided**  12:6
**provider**  16:4
  27:12,14
**public**  32:25
  33:20 35:24
**pull**  10:5
**put**  10:14,25
  16:8
**putting**  11:9

**q**

**qualified**  33:7
**question**  8:3,15
  8:16 29:2
**questions**  6:19
  8:11 30:7,25
  32:13,16

**quick**  30:25
**quickly**  6:21

**r**

**r**  2:1 3:9
**raise**  6:2
**rankin**  34:2,16
**rather**  10:16,17
**read**  10:20
  11:15
**reads**  20:15
**reason**  8:7 35:5
**recall**  10:13
**receive**  27:8
**received**  23:9
**receives**  27:6
**recollection**
  10:19 24:6
**record**  3:11,15
  4:5,6,17 5:7,19
  10:22 11:2,3,5
  11:6 19:17
  21:24 22:4
  23:12 26:14
  29:21,24,25
  30:2 32:18
  33:9 34:5
**recorded**  4:25
  33:6
**recording**  4:20
  33:8 34:3
**records**  23:12
  24:22 30:10,23
**reduced**  33:6
**refer**  9:17

**referenced**
  30:11
**referring**  9:18
**regarding**  30:9
**related**  33:10
  34:7
**relative**  33:12
  34:9
**relatively**  6:21
**rely**  10:19
**remember**
  10:16
**remote**  1:14
**remotely**  4:14
**repair**  13:20,21
**repaired**  14:3
**rephrase**  8:17
**report**  13:11
  17:11,12,14
  18:2
**reported**  1:17
**reporter**  4:2,4
  5:13,17,24 6:9
  11:3,6 29:23
  30:2 32:17
**reporting**  35:2
**request**  15:17
  16:15 22:4
  26:13
**requested**
  33:21
**requesting**
  16:10 24:24
  25:2

**requests** 16:16
  30:10
**reserve** 30:20
**reserves** 30:12
**responding**
  31:22
**response** 12:7
  23:9
**review** 8:20
  23:22 33:21
**reviewed** 8:22
  11:19,22
**reviewing**
  11:21
**reviews** 20:22
**right** 6:2,11
  7:13,17 9:4,12
  9:24 10:18
  11:9,13 13:5,6
  13:23 14:9
  15:6 17:6,17
  18:12,13 19:25
  20:4,25 21:14
  22:3,9 23:25
  24:15 25:5
  26:13 28:19
  30:6,12,20
  32:7,17
**rochelle** 34:2
  34:16
**room** 6:23
**root** 13:20
**rules** 4:24
**run** 17:10,12
  17:14 18:2

**ryan** 2:3 5:9
**ryan.milun** 2:7

**s**

**s** 2:1 3:5,9,9
  35:5
**saw** 17:21
**says** 13:12,19
  20:10 25:2
**scientific** 31:12
**screen** 10:14
  11:10 17:4
  20:3 23:14
  24:20
**scroll** 21:5
**scrolling** 12:12
**second** 11:2
  29:22
**see** 5:22 11:11
  14:20 20:4,10
  20:17,19 22:14
  23:13 24:9,16
  25:18 26:18
  29:19 30:22
**seeing** 24:6
**seen** 22:12
**self** 13:2
**send** 19:16
  24:24 26:22
**sends** 18:25
  19:10 20:23
  24:12
**sense** 9:22
**sent** 3:13,16
  18:20 19:12
  21:11,15,22,24

22:5 23:2,6
  26:8,15,15
**september** 25:6
**service** 9:25
  10:2,9 28:15
**set** 23:21
**setting** 27:19
**share** 17:5 20:3
**sheet** 35:2
**show** 7:18 22:5
  26:14
**showing** 3:11
  3:15
**siena** 13:8
**signature** 20:11
  20:12 33:19
  34:15
**sir** 7:11 12:23
  21:8
**skills** 33:9 34:6
**small** 14:6
**somebody** 19:6
  29:10
**soon** 19:2
**sorry** 26:6 28:6
**sort** 11:20
  21:24 23:17
  26:22
**speak** 8:25
**speaking** 7:25
  30:17
**st** 13:7 15:3
**started** 6:22
**state** 5:18 30:7
  33:20

**states** 1:1
**stem** 14:7
**stenographic**
  5:2
**step** 18:4
**stipulation** 5:4
**stony** 1:16 5:21
**stop** 17:4
**stretch** 8:9
**strike** 29:2
**submit** 32:5
**submits** 18:23
  29:10
**submitted**
  17:18,24 27:2
  31:16,18,24
  32:6
**submitting**
  17:19 29:9
**subscribed**
  32:22 35:21
**suite** 2:5,14
**support** 26:23
**sure** 5:20 7:10
  10:17 11:3
  14:2,18 15:24
  26:12 27:24
  29:23 31:3
**surgeon** 10:21
  15:4 18:23,24
  20:22 24:11
**surgery** 16:22
  18:14 19:2
**swear** 4:13
  5:25

**sworn** 4:17 6:6 32:22 33:5 35:21

**t**

**t** 3:5,9,9 19:20
**take** 4:4,11 8:8 8:11 18:4
**taken** 4:8 16:23 33:3,11 34:8
**talking** 15:23
**team** 22:24 24:11
**tell** 6:6 7:16 8:15 10:11,17 17:11,15 24:18 32:3
**terms** 13:24
**testified** 6:8
**testify** 10:13
**testifying** 33:5
**thank** 5:17,24 6:9,11 7:23 9:24 11:13,18 12:21 13:17 14:9 18:13 19:23 26:6 30:4 32:7,12 32:14
**thing** 29:23
**think** 12:13 19:23
**thomas** 2:12
**time** 1:13 5:5 8:2 32:19

**today** 6:20 7:24 8:8 10:23 15:23
**today's** 8:21
**tom** 5:11 6:14
**top** 25:18
**towards** 15:16
**tpk** 2:16
**transcriber** 34:1
**transcript** 4:19 33:21 34:3,4
**transcriptionist** 33:7
**treated** 10:21 17:15
**treating** 7:4 18:7,8
**true** 33:8 34:4
**truth** 6:6,7,7
**try** 8:17
**two** 14:3 19:4
**typewriting** 33:6

**u**

**u** 3:9,9
**under** 4:23
**underpaid** 24:24 26:19,21 27:15
**underpayment** 27:4
**understand** 4:18 8:15,16

**understanding** 19:22
**united** 1:1
**upward** 24:22
**use** 8:8 19:19
**uses** 4:22

**v**

**v** 1:6 35:3
**vaksha** 14:2 18:9
**vedant** 18:9
**verbal** 7:24
**verification** 16:8
**veritext** 4:4 35:2
**videoconfere...** 2:3,12
**virtual** 24:12
**virtually** 4:20

**w**

**wait** 8:2
**want** 7:9,18 10:10,12,19 18:4 30:7
**way** 7:13 27:25
**wednesday** 1:12
**weeks** 19:4
**went** 15:14 20:18 22:12
**west** 2:14
**whichever** 7:13

**witness** 4:14,17 4:18 6:2,5 7:4 30:13,21 32:14 33:4 35:4
**woodbury** 2:15
**work** 19:7,8
**workers** 1:7 2:10 4:9 6:16 7:3,5 9:14,19 17:9,20,25 22:15,18 35:3
**works** 22:21
**worth** 19:24
**written** 5:3

**x**

**x** 3:1,5 33:21

**y**

**yeah** 8:22 10:4 11:12 12:4,20 13:16 16:12 20:9,14 21:9 23:7 24:4,17 24:25 28:22 29:17 31:6
**yep** 20:5
**york** 1:2 4:13 5:22 33:20 35:2

**z**

**zip** 5:22
**zoom** 11:14,16

Federal Rules of Civil Procedure

Rule 30

(e)  Review By the Witness; Changes.

(1)  Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A)  to review the transcript or recording; and

(B)  if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2)  Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the

foregoing transcript is a true, correct and complete

transcript of the colloquies, questions and answers

as submitted by the court reporter. Veritext Legal

Solutions further represents that the attached

exhibits, if any, are true, correct and complete

documents as submitted by the court reporter and/or

attorneys in relation to this deposition and that

the documents were processed in accordance with

our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining

the confidentiality of client and witness information,

in accordance with the regulations promulgated under

the Health Insurance Portability and Accountability

Act (HIPAA), as amended with respect to protected

health information and the Gramm-Leach-Bliley Act, as

amended, with respect to Personally Identifiable

Information (PII). Physical transcripts and exhibits

are managed under strict facility and personnel access

controls. Electronic files of documents are stored

in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.