UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____X
AA MEDICAL P.C.,

          Plaintiff,

  v.

IRON WORKERS LOCALS 40, 361 & 417
HEALTH FUND,

          Defendant.
_____X

Case No. 2:22-cv-01249-ENV-LGD

**MEMORANDUM**
**OF LAW**

---

**PLAINTIFF AA MEDICAL'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

Of Counsel:   Dimitri Teresh, Esquire
On the Brief:  Ryan Milun, Esquire
                 Susan Ferreira, Esquire

## **PRELIMINARY STATEMENT**

This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), and seeks redress for the defendant's underpayment and wrongful denial of reimbursement for medically necessary and covered surgical services rendered by AA Medical, an out-of-network provider, to a participant in defendant's self-funded health plan.

On June 16, 2021, a surgeon with AA Medical's practice, Dr. Verdant Vaksha, performed complex and medically necessary and pre-authorized orthopedic surgical procedures, including a meniscus root repair, lateral meniscus repair, and microfracture chondroplasty. AA Medical submitted an invoice totaling $158,438.64 to defendant. Defendant reimbursed a mere $3,473.22 – less than 2.2% of the billed amount – purportedly based on defendant's internal application of a "Scheduled Allowance" and an unsupported medical necessity determination.

Defendant now moves for summary judgment on the ground that its determination was reasonable and entitled to deference. However, defendant's motion fails because numerous material facts remain in dispute. These include whether the microfacture chondroplasty was medically necessary, whether defendant's reliance on a third-party reviewer (MedReview) was procedurally and substantively deficient, whether defendant's reimbursement methodology under its so-called "Scheduled Allowance" was ever disclosed to participants or providers, and whether defendant violated ERISA's claims procedure regulations by failing to respond to AA Medical's timely appeal.

Moreover, defendant's denial was not based on any finding that the procedure was experimental, investigational, or improperly coded – it was based solely on a flawed and conclusory assessment of medical necessity that ignored the operative and MRI reports, standard orthopedic practice, and AA Medical's clinical judgment. Defendant also ignored AA Medical's

September 28, 2021 and December 15, 2021 appeal entirely, in violation of ERISA regulations mandating full and fair review.

Because defendant's benefit determination was unsupported by substantial evidence, procedurally improper, and contrary to the terms and purpose of the Plan, summary judgment must be denied.

## STANDARD FOR SUMMARY JUDGMENT

Pursuant to CPLR 3212 a motion for summary judgment "shall be granted if, upon all the papers and proof submitted, the cause of action or defense shall be established sufficiently to warrant the court as a matter of law in directing judgment in favor of any party….**the motion shall be denied if any party shall show facts sufficient to require a trial of any issue of fact**." *Emphasis added.* It is well settled that summary judgment should only be granted when there is no doubt as to the absence of triable issues. See Zuckerman v. City of New York, 49 N.Y.2d 557, 562 (1980). Summary judgment is a drastic remedy and should not be granted if there is any doubt as to the existence of a material and triable issue of fact. See Cornell University v. Dickerson, 418 N.Y.S.2d 977 (Ny. Sup. Ct. 1979). This case presents factual disputes of material fact with regard to the plan interpretation, the medical necessity of treatment, or the procedural fairness of the denial. AA Medical respectfully submits that defendant has failed to meet its burden under the summary judgment standard, requiring denial of its' motion for summary judgment.

## STATEMENT OF FACTS

AA Medical will rely upon the Counterstatement of Facts submitted with this memorandum of law. A brief summary of the pertinent facts are provided herein.

On June 16, 2021, Dr. Vendant Vaksha, a board-certified orthopedic surgeon with AA Medical, performed a medically necessary left knee meniscus root repair, lateral meniscus repair,

and microfracture chondroplasty on a patient who was a participant in Defendant's self-funded ERISA plan. AA Medical is an out-of-network orthopedic surgical practice. The procedures were performed following a diagnosis of a left knee ACL tear, medial and lateral meniscus tears, and other intra-articular pathology. The microfracture chondroplasty was performed in the non-weight-bearing area of the articular cartilage to facilitate the healing of the meniscal repairs – this is standard practice in such orthopedic cases.

Prior to the surgery, AA Medical obtained pre-authorization for two procedures. After the surgery, AA Medical submitted a claim to defendant using a CMS-1500 form for a total of $158,438.64. Defendant only reimbursed $3,473.22. Defendant denied reimbursement for procedure with CPT code 29879 (microfracture chondroplasty) on the basis that no lesion was observed that would justify the procedure, relying on a report from a third-party reviewer, MedReview. However, the operative and MRI reports supported the presence of intra-articular pathology making the microfracture chondroplasty a medical necessity. It should be noted that defendant's reviewer did not identify the procedure as experimental, investigational, or miscoded, nor did it cite any medical literature contradicting AA Medical's clinical judgment.

AA Medical submitted a written appeal, which defendant failed to address. Defendant's claim determination was purportedly based on a "Scheduled Allowance" using FAIR Health data, however, the methodology and percentile calculation were not disclosed to the patient (plan participant) or AA Medical at the time of care or pre-authorization. Moreover, defendant's Summary Plan Description ("SPD") did not clearly define "Scheduled Allowance" or provide sufficient guidance on how out-of-network reimbursements would be calculated, thereby depriving AA Medical and the patient of fair and proper notice.

These facts demonstrate disputed issues of material fact concerning the medical necessity of the services rendered, the sufficiency and fairness of defendant's reimbursement process, and defendant's compliance with ERISA procedural and fiduciary obligations, warranting a denial of summary judgment.

**LEGAL ARGUMENT**

**POINT I**

**SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE AA MEDICAL HAS STATED A VALID CLAIM UNDER ERISA §502(a)(1)(B) AS DEFENDANT'S CLAIM DETERMINATION AND UNDERPAYMENT WAS CONTRARY TO THE TERMS OF THE PLAN.**

Defendant contends that AA Medical fails to state a valid claim under ERISA §502(a)(1)(B) because the Plan Administrator acted within its discretion to interpret the plan and determine the benefit eligibility. However, defendant's argument fails because (1) the claim determination and underpayment of benefits was not based on a rational application of the plan's actual terms, and (2) the SPD is ambiguous and fails to disclose any specific, objective methodology used to calculate the reimbursement amount. These deficiencies render defendant's determination arbitrary, capricious and in violation of ERISA.

Under ERISA §502(a)(1)(B), a plaintiff may bring a civil action to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." See 29 U.S.C. §1132(a)(1)(B). Here, AA Medical, as the patient's authorized assignee under the plan, filed this action to enforce its rights to benefits expressly due under the plan for covered orthopedic surgical services. To that end, AA Medical alleges that the patient received medically necessary surgical services and billed for those services which totaled $158,438.64. Defendant paid only $3,473.22 – a payment that amounts to

just over 2% of the total amount billed. Defendant has provided no explanation, either in its motion or in prior communications, as to how this payment was calculated under the plan's terms.

As for the out-of-network medical benefits, the SPD states:

> You may continue to see any doctor you choose, however quite some time ago the Plan contracted with MagnaCare to provide you with the option of in-network benefits at a lower cost to you.
>
> If you receive services from doctors that are NOT in the MagnaCare medical networks, you are responsible for the out of network service as follows:
>
> You must meet deductibles of $500 per individual or $1,000 per family, before the Plan begins to pay for your Covered Medical Expenses each calendar year.
>
> If you use an out of network provider, the Plan with pay 60% of the Plan's allowed amount charges of your Covered Medical Expenses after you have met your deductible. You will be responsible for paying 40% of the charges and any amount above the Plan allowed amount.
>
> Once you have incurred charges of up to $5,000 and paid 40% coinsurance of that $5,000 in addition to your deductible, the Plan will pay the rest of your covered expenses at 100% of the Plan's Scheduled Allowed charges for the remainder of the calendar year.

***Exhibit I, SPD Page 76***

The SPD defines "Allowed Amount/Allowed Charge/Allowed Amount/Allowable Charge/Scheduled Allowance for Medical and Dental Benefits" as:

> …the amount this Plan allows as payment for eligible medically necessary covered services or supplies. The Allowed Charge amount is determined by the Plan Administrator or its designee to be the lowest of:
> …
> 2.   With respect to a Non-Network provider, Allowed Charge amount means [the schedule that lists the dollar amounts the Plan has determined it will allow][150% of the amount Medicare would have allowed] for eligible medically necessary covered services or supplies performed by Non-Network providers.
> …

    4. The negotiated discounted amount that a non-network provider agreed to, reducing the provider's original billed charges to a lower, discounted amount; or

    5. The Health Care or Dental Care Provider's/facility's actual billed charge.

***Exhibit I, SPD Page 117.***

  Nowhere in the SPD, however is the "schedule" actually disclosed, nor is the FAIR Health database or methodology explicitly identified as the data relied upon for determining reimbursement rates. Further, there is no statement as to what percentile of FAIR Health may be used or whether any consistent methodology governs how different procedures are reimbursed. This lack of specificity makes the Plan's terms ambiguous and results in inconsistent, unsupported and unreasonable application of the terms – which is exactly what occurred here.

  ERISA requires plan administrators to provide claimants with a "full and fair review," and to explain adverse benefit determinations in a manner sufficient to permit informed review. See 29 U.S.C. §1133. Defendant's vague assertion that it used FAIR Health, together with the absence of any disclosed methodology or list, fails to satisfy these requirements. Defendant's reliance on "Scheduled Allowance" is misplaced because the Plan does not identify what that allowance is for any of the CPT codes at issue, how it was derived, or what data it is based on. The ambiguity in the SPD – particularly with regard to how reimbursements are calculated for out-of-network services – eliminates any presumption of reasonableness and undermines the deferential standard of review that defendant seeks to invoke. It is not enough for defendant to claim that it paid 60% of the Scheduled Allowance without disclosing the allowance, how it was calculated, or how it relates to either Medicare rates or the unspecified "list" mentioned in the SPD. The record suggests that the $3,473.22 reimbursement is grossly disproportionate and unrelated to any reasonable interpretation of a "Scheduled Allowance," especially where the charges exceeded $158,000 for

complex orthopedic surgery. Thus, AA Medical has stated a valid claim under ERISA §502(a)(1)(B) for judicial review of defendant's benefit determination and calculation/method of reimbursement for the services rendered.

## POINT II

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE DEFENDANT'S BENEFIT DETERMINATION WAS ARBITRARY AND CAPRICIOUS AS IT IGNORED THE MEDICAL NECESSITY OF THE SERVICES RENDERED, RELIED ON AN ERRONEOUS FACTUAL PREMISE AND FAILED TO FOLLOW ERISA PROCEDURES.**

Defendant argues that its interpretation of the plan provision was rational and not arbitrary and capricious because it "relied upon the FAIR Health schedule of allowances, incorporated by reference into the Plan, for out-of-network costs and paid Plaintiff the required 60% of that allowance as specified under the Plan." ***See Page 9 of Defendant's Memorandum of Law***. This argument, however, is without merit and ignores the disputed issues of fact in this case. The facts demonstrate that defendant's benefit determination was based on incorrect facts, ignored clear evidence of medical necessity, and failed to comply with ERISA's procedural requirements. Thus, its determination was not rational or reasoned and must be overturned.

It is well settled that a plan administrator's determinations may be overturned if they are arbitrary and capricious. See Roganti v. Metro. Life Ins. Co., 786 F.3d 201 (2d Cir. 2015), citing Pagan v. NYNEX Pension Plan, 52 F.3d 438, 441 (2d Cir. 1995). "In this context, arbitrary and capricious means 'without reason, unsupported by substantial evidence or erroneous as a matter of law." Id. "An ERISA plan administrator…owes a fiduciary duty not just to the individual participant or beneficiary whose claim is under review, but to all of the participants and beneficiaries od the plan." Id., citing 29 U.S.C. §1104(a)(1); Morse v. Stanley, 732 F.2d. 1139,

1144-45 (2d Cir. 1984). As a result, Courts have held that "ERISA requires a balance between 'the obligation to guard the assets od the trust from improper claims [and] the obligation to pay legitimate claims." Id., citing Harrison v. Wells Fargo Bank, N.A., 773 F.3d 15, 20 (4th Cir. 2014). "In striking this balance with respect to a particular claim, a fiduciary must, among other things, assess whether the claimant has furnished sufficient evidence that he is entitled to the benefits he seeks. Id. Courts have further held that "it may be arbitrary and capricious for the administrator to reject a claimant's evidence as inadequate without making a reasonable effort to develop the record further." See Gaither v. Aetna Life Ins. Co., 394 F.3d 792, 808 (10th Cir. 2004).

Here, defendant denied reimbursement for procedure bearing CPT code 29879 (microfracture chondroplasty), stating that "the operative report did not describe any lesion" requiring the procedure. This conclusion is factually inaccurate. As alleged in the Complaint and supported by the surgical report, MRI imaging and the declaration of Dr. Vaksha, the patient presented with multiple knee injuries, including an ACL tear and complex medial and lateral meniscus tears. This was indeed acknowledged by the defendant's reviewer, MedReview, when it pre-authorized the surgical procedure. In fact, defendant's reviewer noted:

> ***Clinical Synopsis and Rationale***
>
> Although the radiology report refers to this is [sic] a subacute ACL injury, the history and finding of an effusion with blood in the knee (hemarthrosis) indicates that this is an acute injury and within reasonable medical probability related to the kickball injury described on May 25, 2021. Treatment notes reflect a positive Lachman test indicating that the knee is clinically unstable, and the MRI also documents tears of both medial and lateral menisci. The menisci are secondary stabilizers for the anterior cruciate ligament and cruciate repair/reconstruction carries a high failure rate without repairing those secondary stabilizers. Accordingly, both menisci need to be repaired to protect the repair/reconstruction of the ACL. The ACL needs to be repaired or reconstructed to provide stability for the knee.

> CPT code 29883 refers to arthroscopy and repair of both the medial and later menisci which is an accurate description of the indicated procedure.
>
> CPT code 29888 refers to his surgical repair/reconstruction of the anterior cruciate ligament, which is also indicated.
>
> ***Recommendation:***
>
> I recommend proceeding with the surgery as described with the CPT codes listed above.

***Exhibit C - MedREview Report 6-7-21***.

The microfracture chondroplasty was performed in the intercondylar notch – a non-weight bearing area – specifically to promote healing of the meniscal repair. It was medically necessary and directly related to the underlying knee pathology. Defendant never concluded that the procedure was experimental or investigational, nor did it challenge the coding. Rather, it summarily minimized the necessity of the procedure based on the unfounded conclusion that no lesion existed – despite the medical record to the contrary. Thus, the denial of benefits was based on a false reading or understanding of the operative report and pathology and is not merely a disagreement in interpretation. Therefore, the determination is arbitrary and capricious as it was not based on substantial evidence.

Moreover, defendant's claim determination, and its subsequent refusal to respond to AA Medical's timely appeal violated ERISA's regulations governing full and fair review. As outlined above, an ERISA fiduciary must timely respond to an appeal and provide the specific reasons for denial, including reference to the specific Plan provisions on which the denial is based. Defendant failed to do so here and instead ignored AA Medical's appeal entirely and deprived it of a meaningful review. Defendant's failure to engage in a full, fair and meaningful review, especially when viewed together with a determination based on clearly erroneous grounds, justifies a finding

that the determination was arbitrary and capricious, and justified denial of defendant's motion for summary judgment.

## CONCLUSION

Defendant's motion for summary judgment should be denied in its entirety as AA Medical has sufficiently stated a claim under ERISA §502(a)(1)(B), and there are genuine issues of material fact as to whether Defendant's benefit determination was consistent with the terms of the plan and supported by substantial evidence. The language of the SPD is ambiguous, fails to disclose the specific methodology used to calculate reimbursement, and does not support Defendant's substantial underpayment in the face of complex, medically necessary surgical services. Moreover, Defendant's denial of coverage for a pre-approved, medically necessary procedure based solely on a conclusory third-party review, without meaningful explanation or consideration of the treating surgeon's findings, was arbitrary and capricious. Accordingly, AA Medical respectfully requests that the Court deny Defendant's motion for summary judgment in its entirety.

Dated: June 27, 2025

Respectfully submitted,

**THE KILLIAN FIRM, P.C.**

By:_____
DIMITRI TERESH, ESQ.