UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

───────────────────────────────X

AA MEDICAL,

          Plaintiff,

    v.

IRON WORKERS LOCAL 40, 361 & 471
HEALTH FUND,

          Defendant.

───────────────────────────────X

Case No. 2:22-cv-01249-ENV-LGD

**COUNTERSTATEMENT OF MATERIAL FACTS**

DIMITRI TERESH, ESQ., as an attorney admitted before the Courts in the State of New York and aware of the penalties of perjury, duly affirms the following:

I am a an attorney with The Killian Firm, P.C., attorneys for the Plaintiff, AA MEDICAL, and, as such am fully familiar with the facts and circumstances of this case based on the file maintained by this office.

### RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS

1.     Admitted.

2.     Admitted.

3.     Admitted.

4.     Denied in part. Plaintiff does not dispute that the Trust Agreement grants certain authority to the Board of Trustees. However, Plaintiff denies that such authority includes unlimited discretion to reduce covered benefits to arbitrary amounts, or apply undefined reimbursement schedules without proper notice to its participants.

5.     Admitted.

6. Denied in part. Plaintiff admits that the Summary Plan Description ("SPD") includes statements about plan benefits and administration, but denies that it clearly defines how reimbursement amounts are calculated for out-of-network providers. Plaintiff further denies that the SPD unambiguously confers discretionary authority that precludes judicial review, especially where defendant fails to conduct a full and fair review under ERISA regulations.

7. Denied in part. Plaintiff admits that the SPD includes the provisions quoted by counsel, but denies that defendant followed the SPD's procedures, particularly with regard to the appeals process and its failure to identify FAIR Health in the plan or explain how it is used to determine out-of-network payments. Further, the SPD does not clearly define or explain what the "Plan's Scheduled Allowance" means.

8. Denied in part. Plaintiff does not dispute that FAIR Health is a third-party vendor, but denies that defendant properly incorporated its methodology into the SPD or that it fairly disclosed the methodology relied upon to calculate the underpayment. Plaintiff also disputes the reasonableness of using such methodology, especially where the total reimbursement was less than 2.2% of the billed amount.

9. Denied in part. Plaintiff admits that it is a surgical practice group with a principal place of business in Stony Brook, NY and that it does not have an in-network contract with the defendant. Plaintiff further admits that it submitted an invoice totaling $158,438.64 and was paid $3,473.22. However, Plaintiff denies that defendant's explanation regarding the microfracture chondroplasty is accurate or supported by medical evidence. The procedure was medically necessary based on intraoperative findings and standard orthopedic practice.

10. Denied in part. Plaintiff admits that it sought pre-approval for procedures 29883 and 2988 and that defendant approved both procedures. However, plaintiff denies any

implication that pre-authorization was required for other medically necessary procedures performed in response to intraoperative findings. Procedure 29879 was medically necessary and consistent with the pre-approved procedures.

11. Denied in part. Plaintiff admits that it performed procedures 29883 and 29879. However, Plaintiff denies defendant's implication that pre-authorization was required before performing procedure 29879. Both procedures were medically necessary, consistent with standard orthopedic care and related to the same condition as the pre-authorized procedures.

12. Denied. While plaintiff admits that it billed defendant $99,756.32 and $58,682.32 for procedures 29883 and 29879, plaintiff denies that defendant's reliance and payment calculation under the FAIR Health schedule constitutes proper reimbursement. Defendant fails to show how the reimbursement rate was calculated, fails to prove that FAIR Health's schedule was incorporated into the SPD, and fails to demonstrate how the 60th percentile was applied.

13. Denied. Plaintiff denies that the billed charges were excessive or unreasonable. The fact that defendant claims the billed charges exceed the 100th percentile of FAIR Health alone does not demonstrate unreasonableness, especially given the specialized nature of the surgery.

14. Denied. Contrary to counsel's statement, defendant's independent medial reviewer determined that **procedure 29888 was medically necessary and indicated**. Indeed, the medical reviewer's report dated June 7, 2021 specifically states that "[t]he proposed arthroscopy of the left knee with meniscal repair and cruciate repair/reconstruction is indicated," "[t]he submitted CPT codes accurately describe the proposed procedure," "CPT code 29883 refers to arthroscopy and repair of both the medial and lateral menisci which is an accurate description of the indicated procedure," and "CPT code 29888 refers to his surgical repair/reconstruction of the anterior

cruciate ligament, which is also indicated." **See Exhibit C**. The report further recommends "proceeding with the surgery as described with the CPT codes listed above."

## AA MEDICAL'S COUNTERSTATEMENT OF MATERIAL

1. This is an action under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and its governing regulations, concerning Defendant's under-reimbursement of AA Medical's specialized orthopedic surgery. *(Exhibit A - Amended Complaint ¶1)*.

2. Defendant is a self-funded plan under which AA Medical's patient was a plan participant. *(Exhibit A - Amended Complaint ¶2)*.

3. AA Medical was an out-of-network provider, meaning that its surgeons did not participate in defendant's network. *(Exhibit A - Amended Complaint ¶3)*.

4. On June 16, 2021, surgeon Vendant Vaksha, M.D., affiliated with AA Medical, performed a left knee ACL procedure, medial and lateral meniscus repairs, and a microfracture chondroplasty on defendant's plan participant. *(Exhibits A – Amended Complaint, and Exhibit B - Operative Report)*.

5. Prior to performing the surgery, AA Medical sought and received pre-authorization from defendant for the surgical procedures. On June 7, 2021, David Lessing, M.D. of MedReview reviewed the medical necessity of the recommended surgical procedures on defendant's behalf. Dr. Lessing determined that the "proposed arthroscopy of the left knee with meniscal repair and cruciate repair/reconstruction is indicated" and that the "submitted CPT codes accurately describe the proposed procedure." Dr. Lessing provided the following clinical synopsis and rationale:

> Although the radiology report refers to this is [sic] a subacute ACL injury, the history and finding of an effusion with blood in the knee (hemarthrosis) indicates that this is an acute injury and within reasonable medical probability related to the kickball injury described on May 25, 2021. Treatment notes reflect a positive

> Lachman test indicating that the knee is clinically unstable, and the MRI also documents tears of both medial and lateral menisci. The menisci are secondary stabilizers for the anterior cruciate ligament and cruciate repair/reconstruction carries a high failure rate without repairing those secondary stabilizers. Accordingly, both menisci need to be repaired to protect the repair/reconstruction of the ACL. The ACL needs to be repaired or reconstructed to provide stability for the knee.
>
> CPT code 29883 refers to arthroscopy and repair of both the medial and lateral menisci which is an accurate description of the indicated procedure.
>
> CPT code 29888 refers to his surgical repair/reconstruction of the anterior cruciate ligament, which is also indicated.
>
> ***(Exhibit C - 6-7-21 MedReviewer Report)***.

6. On June 16, 2021, Dr. Vaksha performed the knee surgery. The operative report notes the following:

> Lateral entry portal was made for the arthroscope. Arthroscope was entered. There was hemarthrosis, this was drained. Medial entry portal was made with use of spinal needle. Examination of the medial tibiofemoral compartment showed tear of the posterior horn meniscus, which was freed. The portion of the meniscus was resected. Further examination showed that the root was avulsed and tagged by only the capsular attachment.
>
> Decision was done to root repair. Examination of the intercondylar notch showed tear of the ACL with synovial reaction. Examination of the lateral tibiofemoral compartment showed a bucket handle tear, which was into the intercondylar notch. There was also a flap along the posterior horn of the medial meniscus in a form of a tongue. The decision was done to repair the meniscus. Posterolateral incision was given along the posterolateral corner of the knee. With sharp and blunt dissection along the posterior margin of the LCL, the knee capsule was reached. A space was generated between the gastrocnemius and the knee capsule. A speculum was inserted to avoid injury to the neurovascular bundle posterior to the knee.
>
> Now, the repair of the lateral meniscus was planned. Combination of FastFixes as well as Ti-Cron needle sutures should pass through …specific cannulas were done. The repair also involved tying down the tongue fragment along with the bucket handle fragment. The

meniscal soft tissues were prepared before the repair with the use of shaver and rasp. All the three Ti-Cron needles could have been passed along with the use of six FastFixes for all inside repair. The Ti-Cron need was delivered out of the posterolateral wound. Pictures were taken and saved.

Now, the scope was entered into the medial portal to complete the repair of the lateral meniscus. The repair of the medial root was performed through the medial portal and the scope in the lateral portal. ***(Exhibit B - Operative Report)***.

7. The operative report notes that the following procedures were performed: (1) left knee medial meniscus root repair; (2) left knee lateral meniscus repair; and (3) left knee microfracture chondroplasty. ***(Exhibit B - Operative Report)***.

8. Dr. Vaksha is a fellowship trained orthopedic surgeon with over twenty (20) years of experience in the field of orthopedics. He is fellowship trained in sports medicine and arthroscopic surgery as well as spine surgery and has been practicing in New York for approximately 7 years with privileges in multiple hospitals across healthcare systems, including Northwell Health, Catholic Health System of Long Island, and Mount Sinai. ***(Exhibit D - Declaration of Vedant Vaksha, M.D.)***.

9. Following the surgery, AA Medical submitted a claim for $158,438.64 using the required CMS-1500 form. The CPT codes listed on the insurance claim form were 29883 and 29879. ***(Exhibit E - CMS-1500 Form)***.

10. Defendant reimbursed only $3,473.22 – approximately 2.2% of the total charges. On September 28, 2021, AA Medical appealed defendant's determination and requested that the claim be sent back for review. ***(Exhibit F - 9-28-21 correspondence)***. On December 15, 2021, AA Medical again requested that the claim be sent back for review. ***(Exhibit G - 12-15-21 Correspondence)***.

11. Defendant failed to respond to AA Medical's request for review.

12. In addition, to underpaying on the pre-authorized 29883 procedure, defendant failed to reimburse procedure 29879 based on its medical reviewer's opinion.

13. More specifically, on August 23, 2021, David Lessing, M.D. of MedReview reviewed the claim at defendant's request to determine whether the procedure coded under CPT 29879 was medically necessary. Dr. Lessing determined:

> 1. The operative report describes performing a microfracture chondroplasty representing CPT code 29879. The operative report does not describe any lesion in the knee that would require a microfracture chondroplasty. Furthermore, the MRI study from 06/02/21 did not identify an articular cartilage lesion in the left knee. Therefore, the supplied records do not support performing a microfracture chondroplasty of the left knee.
>
> 2. According to the operative reports, the billed procedures were performed on the dates that match the HCFA forms. As noted above, the microfracture chondroplasty (CPT 29879) is not supported by the available records.
>
> 3. The submitted CPT codes are accurate coding for the procedures described in their respective operative reports.
>
> 4. It is not typical for the procedures performed on 06/16/21 or 07/15/21 to require two operative assistants. One operative assistance is customary, usual and reasonable. The operative reports from 06/16/21 do not describe conditions that would require a second assistant.
>
> The operative report from 07/15/21 does not describe conditions that would require a second assistant. Even the preparation of the ACL graft from the 07/15/21 procedure was performed by Dr. Vaksha and one assistant. The operative report is specific in this area and does not indicate that two assistants prepared the graft while Dr. Vashka performed another portion of the procedure simultaneously.
> …
> In summary, the submitted medicals describe medial and lateral meniscal repair with a microfracture chondroplasty on 06/16/21. The operative reports describe meniscal pathology that justifies the repair procedures performed. The operative report from that date does not describe a cartilage legion requiring a microfracture

chondroplasty. The microfracture chondroplasty (CPT 29879) is not supported by the records and is not medically necessary. *(Exhibit H - 8-23-21 MedReviewer Report)*.

14. Contrary to the MedReviewer's report, the microfracture chondroplasty was medically necessary and was performed based on intraoperative findings that revealed cartilage damage in the non-weight bearing intercondylar notch of the femur, a lesion not detected by the preoperative MRI. *See Exhibit B – Op. Report and Exhibit D – Dec. of Dr. Viksha*).

15. According to Dr. Vishka, the MedReviewer's findings are erroneous and contrary to supported medical literature and professional standards. More specifically, Dr. Viksha avers:

> 5. It is my medical opinion that this represents a false conclusion on the part of the reviewer. The Patient had a left knee injury while playing kickball, following which he went to a hospital and was later seen in my office. He got an MRI done which showed a tear of the Anterior Cruciate ligament (ACL) and medial and lateral meniscus. Considering his young age and good general health, we agreed to do repair of the ACL as well as both meniscus…During the procedure the MRI findings were confirmed, and the decision was made to go as planned. Repair of both lateral meniscus was performed with inside out technique and that of medial meniscus root was also performed. This surgery was done under a tourniquet to have a bloodless field of surgery. The procedure of repair took more than 100 minutes of tourniquet time. The repair of the ACL would have needed more tourniquet time which would have been detrimental and would possibly jeopardize the vascularity of the leg. Considering that it was decided to carry out the ACL reconstruction as a staged procedure. Medical literature has shown that the meniscus repairs done along marrow venting procedure have a higher rate of success and healing. Hence it was decided to carry out microfracture chondroplasty in the non-weight bearing area of the articular cartilage (intercondylar notch) to allow the marrow (seen as fat globules and blood) to seek into the joint. ACL reconstruction was later performed after four weeks as a staged procedure.
>
> 6. We billed microfracture chondroplasty performed in the intercondylar notch to allow healthy bone marrow to vent out into the knee joint so as to allow good and early healing of the meniscus repair. Microfracture chondroplasty was not done for

any particular articular cartilage lesion (which the MedReview report wrongly stated) but the sole purpose of allowing an early healing of the meniscus repair by the help of the growth factors from the bone marrow cells that enter from these micro fracture sites and bathe the joint specifically in the region of meniscus repair. These healing growth factors are necessary for early and higher rate of meniscus healing and to avoid secondary surgeries.

7. The medical literature shows that this marrow venting procedure is important in early and higher healing rates in the presence of meniscus tears. There has been substantial evidence in the medical literature that bone marrow venting by performing microfracture chondroplasty in the intercondylar notch has superior rates of meniscus healing in the setting of meniscus repair. It is a standard procedure to perform microfracture chondroplasty (CPT code 29879) with meniscus repair surgeries (29882/29883).

8. If the chondroplasty is not performed and the repair fails the patients may need secondary procedures which may include but not limited to repeat meniscus repair surgery (CPT 29883/29883); or meniscus transplant (CPT 29868). This will lead to a complicated postoperative course for the patient with suboptimal outcome in the long run with possible need for a total knee replacement (CPT 27447) sooner than would have been needed if the primary surgery is successful.

9. An example in the medical literature of the medical necessity of the bone marrow venting procedure (microfracture chondroplasty) is as follows:

> Kaminski, et al., Repair Augmentation of Unstable, Complete Vertical Meniscal Tears With Bone Marrow Venting Procedure: A Prospective, Randomized, Double-Blind, Parallel-Group, Placebo Controlled Study, J. Arthro. 2018 11.056.

10. The MedReview report also states that it was "not typical" for the procedure to require two assistants, and concludes that "One operative assistant is customary, usual and reasonable."

11. I was not an assistant surgeon in this case. I was the operating surgeon for this surgery.

(***Exhibit D - Declaration of Dr. Viksha***).

16. The procedure CPT 29879 was not separately pre-authorized, but it was medically necessary and performed as a standard part of the meniscal repair based on intraoperative discovery. ***(Exhibit B – Op. Report and Exhibit D - Viksha Dec.***).

17. Defendant denied reimbursement for CPT 29879 on the basis that the operative report did not describe any lesion that would require a microfracture procedure. ***(Exhibit H - MedReview Report***)

18. The denial was based on a report by MedReview, which relied on preoperative MRI imaging and did not take into account the surgeon's intraoperative findings or standard orthopedic protocols. ***(Exhibit H - MedReview Report, Exhibit D Dec. of Dr. Viksha***).

19. The MedReview Report did not state that the procedure was experimental, investigational, or miscoded. It simply disagreed with the necessity based on imaging – not clinical evidence or medical literature. (***Exhibit H - MedReview Report, Exhibit D Dec. of Dr. Viksha***).

20. Defendant failed to provide a full and fair review of the denied claim by failing to respond to AA Medical's written appeal submitted on September 28, 2021 and December 15, 2021. (***Exhibits F & G - Appeal Letters).***

21. Defendant's Summary Plan Description ("SPD") claims to reimburse out-of-network services at 60% of a "Plan's Scheduled Allowance," but does not clearly define that term or the "list" referenced in the definition or provide a methodology for its calculation. (***Exhibit I, Excerpts of SPD).***

22. The SPD does not clearly incorporate FAIR Health or disclose percentile used in calculating allowable amounts. (***Exhibit I, Excerpts of the SPD).***

23. Defendant did not disclose how FAIR Health data was applied, nor did it explain how CPT 29879 was valued for reimbursement purposes. (***Exhibits C, H, I).***

24. AA Medical's billed charges for these complex, multi-procedure surgeries are consistent with market rates and reflect the specialized nature of the treatment rendered. (***Exhibits B, D).***

25. AA Medical was not notified that FAIR Health, or any percentile therefrom, would be used to limit reimbursement, nor was the patient. (***Exhibits C, H, I).***

26. Procedure 29879 is not excluded from coverage and is not listed as experimental, investigational, or cosmetic under the plan. (***Exhibits C, H, I).***

DATED:   June 27, 2025

        Respectfully yours,

        THE KILLIAN FIRM, P.C.

        _____
        Dimitri Teresh, Esquire
        Attorneys for Plaintiff, AA Medical
        Tindall Executive Suites
        107 Tindall Road
        Middletown, New Jersey 07748