UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
AA MEDICAL, P.C.,

               Plaintiff,

       v.

IRON WORKERS LOCAL 40, 361 & 471
HEALTH FUND,

               Defendant.

----------------------------------------------------------X

**MEMORANDUM
AND ORDER**
22-CV-1249-SJB-LGD

**BULSARA, United States District Judge:**

Plaintiff AA Medical, P.C. ("AA Medical") filed this action against Defendant

Iron Workers Local 40, 361 and 471 Health Fund (the "Fund") seeking to overturn a

decision denying and limiting reimbursement for arthroscopic knee surgery performed

on a Fund participant.[1]  The Fund has moved for summary judgment on AA Medical's

sole claim brought pursuant to the Employee Retirement Income Security Act of 1974

("ERISA").  (Def.'s Mem. in Supp. of Mot. for Summ. J. dated Jan. 16, 2025 ("Def.'s

Mot."), Dkt. No. 73).  For the reasons explained, the motion is granted.

<u>STANDARD FOR SUMMARY JUDGMENT</u>

A "court shall grant summary judgment if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

"A genuine issue of material fact exists if 'the evidence is such that a reasonable jury

---

[1] In its papers, the Fund states it is the 417, not 471, Health Fund.  (*See*, *e.g.*, Def.'s
Rule 56.1 Statement, Dkt. No. 74 ¶ 2).

could return a verdict for the nonmoving party.'"  *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "In determining whether summary judgment is appropriate, [the Court] must resolve all ambiguities and draw all reasonable inferences against the moving party."  *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the burden of "demonstrat[ing] the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323.  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" in one of two ways.  Fed. R. Civ. P. 56(c)(1).  It may cite to portions of the record "including depositions, documents, electronically stored information, affidavits or declarations, . . . admissions, interrogatory answers, or other materials."  *Id.* R. 56(c)(1)(A).  Alternatively, it may show that "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  *Id.* R. 56(c)(1)(B); *cf. Farid v. Smith*, 850 F.2d 917, 924 (2d Cir. 1988).

In moving for summary judgment or answering such a motion, litigants are required by the Local Rules to provide a statement (a Rule 56.1 statement) setting forth purported undisputed facts or, if controverting any fact, responding to each assertion.  *See* Loc. Civ. R. 56.1(a)–(b).  In both instances, the party must support its position by citing to admissible evidence from the record.  *Id.* R. 56.1(d); *see also* Fed. R. Civ. P. 56(c) (requiring reliance on admissible evidence in the record in supporting or controverting a purported material fact).  "The purpose of Local Rule 56.1 is to streamline the

2

consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001).

Where claims in opposing Rule 56.1 statements are "genuinely disputed," the Court will consider the evidentiary sources of the claims. *Halberg v. United Behav. Health*, 408 F. Supp. 3d 118, 146 (E.D.N.Y. 2019) (adopting report and recommendation). In evaluating the sources of claims made in dueling Rule 56.1 statements, the Court cannot—as is true for the summary judgment motion as a whole—weigh evidence or assess the credibility of witnesses. *See United States v. Rem*, 38 F.3d 634, 644 (2d Cir. 1994). Furthermore, "[l]egal arguments are impermissible in any Rule 56.1 Statement and are to be disregarded." *Taveras v. HRV Mgmt., Inc.*, No. 17-CV-5211, 2020 WL 1501777, at *2 (E.D.N.Y. Mar. 24, 2020); *Lawrence v. Cont'l Cas. Co.*, No. 12-CV-412, 2013 WL 4458755, at *1 n.1 (E.D.N.Y. Aug. 16, 2013) ("Both parties have submitted Local Rule 56.1 statements and responses to each other's statements that mix factual assertions with legal argument and therefore fail to meet the requirements of Local Rule 56.1. The facts . . . are taken from those assertions contained in the Local Rule 56.1 statements that comply with Local Rule 56.1[.]" (citations omitted)). The court may not grant summary judgment based on a fact in a Rule 56.1 statement—even if undisputed—not supported by admissible evidence. *E.g.*, *Giannullo v. City of New York*, 322 F.3d 139, 142–43 (2d Cir. 2003) (vacating grant of summary judgment to defendants based on facts enumerated in Rule 56.1 statement supported only by arguments in briefs rather than admissible evidence). The Court must also disregard conclusory denials that lack citations to

admissible evidence.  *Rodriguez v. Schneider*, No. 95-CV-4083, 1999 WL 459813, at *1 n.3

(S.D.N.Y. June 29, 1999) ("*Rule 56.1 statements are not argument.  They should contain*

*factual assertions, with citation to the record.  They should not contain conclusions*[.]"),

*aff'd*, 56 F. App'x 27, 29 (2d Cir. 2003).  Also, where the opposing party fails to

specifically controvert a numbered paragraph in the Rule 56.1 statement, the statement

by the moving party "will be deemed to be admitted."  Loc. Civ. R. 56.1(c).  The Court

also does not give any consideration to hearsay, speculation, or inadmissible evidence

in evaluating declarations or affidavits.  *Pacenza v. IBM Corp.*, 363 F. App'x 128, 130 (2d

Cir. 2010) ("[A] court is obliged not to consider inadmissible evidence at the summary

judgment stage[.]"); *Crawford v. Dep't of Investigation*, No. 05-CV-5368, 2007 WL 2850512,

at *2 (S.D.N.Y. Oct. 1, 2007) ("[A] non-moving party 'must set forth specific facts

showing that there is a genuine issue for trial;' he or she 'may not rely on mere

conclusory allegations nor speculation, but instead must offer some hard evidence

showing that its version of the events is not wholly fanciful.'" (quoting *Woodman v.*

*WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005))), *aff'd*, 324 F. App'x 139, 143 (2d Cir.

2009).

<u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

The Court finds the following facts relevant to its decision—drawn from the

pleadings, the parties' respective Rule 56.1 statements, and supporting affidavits and

exhibits attached thereto—are undisputed unless otherwise noted.

The Fund is a self-insured, self-funded multiemployer benefit plan within the

meaning of ERISA §§ 3(2), 3(37).  (Def.'s Rule 56.1 Statement ("Def.'s 56.1 Stmt."), Dkt.

No. 74 ¶ 1; Pl.'s Resp. 56.1 Statement ("Pl.'s Resp. 56.1 Stmt."), Dkt. No. 77 ¶ 1).

Participants are members of Iron Workers Locals 40, 361 or 417 (the "Unions") and the

Fund is administered by a Board of Trustees.  (*Id*. ¶¶ 2–3; Def.'s 56.1 Stmt. ¶¶ 2–3).

The Fund is governed by the Restated Trust Agreement effective February 1,

1976 (the "Trust Agreement"), (*id*. ¶ 4), which bestows Trustees the "exclusive

power . . . to determine what benefits the Fund is able feasibly to provide, to determine

the eligibility requirements, and to determine the rules and procedures for obtaining

and administering such benefits."  (Trust Agreement, attached to Aff. of Brian J.

Sabbagh in Supp. of Def.'s Mot. ("Sabbagh Aff.") as Ex. A, Dkt. No. 72 § 4.2).[2]  The Trust

Agreement also permits them to "delegate any of their ministerial or administrative

power or duties to agents, employees, or others."  (*Id*. § 4.7(8)).  To that end, the Fund

delegated to the Fund Administrator and other Fund employees responsibilities of

applying Plan rules to determine eligibility, the calculation of benefits, and the

processing of claims.  (Def.'s 56.1 Stmt. ¶ 5; Pl.'s Resp. 56.1 Stmt. ¶ 5).  The Fund's

Summary Plan Description ("SPD") details the benefits provided by the Plan and how

those benefits are paid, noting that the Plan Administrator and other designees have

"discretionary authority to determine . . . eligibility and entitlement to Plan Benefits in

accordance with the terms of the Plan."  (Def.'s 56.1 Stmt. ¶ 6 (quoting SPD dated Jan. 1,

2021, attached to Sabbagh Aff. as Ex. B, at 80)).

---

[2] AA Medical disputes this fact, and several others, solely based on legal argument, and without citation to any evidence to place the fact in dispute.  (*See, e.g.*, Pl.'s Resp. 56.1 Stmt. ¶ 4).  Such objections are impermissible, and where such objections have been interposed, the Court has concluded the facts have been admitted.

Under the Plan, participants are free to use a doctor of their own choosing.  (*Id.* ¶ 6).  If the participant chooses such an "out-of-network" provider, "the Plan will pay 60% of the Plan's allowed amount charges of [a participant's] Covered Medical Expenses" after the participant has paid their deductible and reasonable and customary charges.  (SPD at 76; Def.'s 56.1 Stmt. ¶ 7).  For anything additional, the Plan will pay the rest of a participant's covered expenses at 100% pursuant to the Plan's schedule of allowance.  (*Id.*; SPD at 76).  The schedule of allowances is compiled by FAIR Health, a third-party vendor that collects a database of claims to determine what providers charge and what insurers pay for healthcare, grouped by geographic area and percentiles.  (Def.'s 56.1 Stmt. ¶ 8; *see also* Sabbagh Aff. ¶ 8 (Fund administrator attesting to the Fund's reliance on FAIR Health's schedule of allowances for out-of-network coverage)).

"[O]nce the Plan makes payment on a claim, no further payment will be made," but an appeals procedure exists for participants or their providers to use in the event of a dispute.  (Def.'s 56.1 Stmt. ¶ 7 (quoting SPD at 102)).

AA Medical is a surgical practice group located in Stony Brook, New York, and does not have an in-network contract with the Plan.  (*Id.* ¶ 9; Pl.'s Resp. 56.1 Stmt. ¶ 9).  On June 16, 2021, AA Medical surgeon Dr. Vedant Vaksha performed knee surgery on a non-party Fund participant (the "Patient").  (*Id.*; Def.'s 56.1 Stmt. ¶ 9; *see also* Report of Operation, attached to Aff. of Dimitri Teresh in Opp'n to Def.'s Mot. ("Teresh Aff.") as Ex. B, at 1).  AA Medical had sought and was granted pre-approval for two procedures, identified as 29883 (arthroscopy and repair of both menisci) and 29888 (repair of the

6

ACL).  (Def.'s 56.1 Stmt. ¶ 10; *see also* June 7, 2021 MedReview Report, attached to Sabbagh Aff. as Ex. C, at 2 (Dr. David Lessing of MedReview finding that the ACL and "both menisci need to be repaired")).  During the surgery, Dr. Vaksha performed the 29883 procedure, but also performed a separate procedure, a left knee microfracture chondroplasty, identified by code 29879.  (Def.'s 56.1 Stmt. ¶ 11; Pl.'s Resp. 56.1 Stmt. ¶ 11; *see also* Aug. 23, 2021 MedReview Report, attached to Sabbagh Aff. as Ex. D, at 2).

AA Medical submitted an invoice for a total amount of $ 158,438.64 ($ 99,756.32 for procedure 29883 and $ 58,682.32 for procedure 29879), and the Fund paid $ 3,473.22, (*id.* ¶¶ 9, 12; Pl.'s Resp. 56.1 Stmt. ¶¶ 9, 12), explaining in its Explanation of Benefits ("EOB") that "the operative report did not describe any lesion in the knee that would require a microfracture chondroplasty," (Def.'s 56.1 Stmt. ¶ 9).  In determining payment for the 29883 procedure, the Fund relied on the FAIR Health schedule of allowances, determining that the 60th percentile rate for procedure code 29883 at that time and place was $ 5,668.09 and then paying 60% of the scheduled allowance.  (*Id.* ¶ 12; Sabbagh Aff. ¶ 9).

For procedure 29879,[3] Dr. Lessing of MedReview reviewed the claim at the Fund's request and concluded that the procedure was not medically necessary.  (Aug. 23, 2021 MedReview Report at 1–2 (finding that "the supplied records [including the operative report and prior MRI study] do not support performing a microfracture

---

[3] The Fund's 56.1 Statement identifies this procedure as 29888.  (Def.'s 56.1 Stmt. ¶ 14).  However, 29888 was the pre-approved ACL repair procedure.  (June 7, 2021 MedReview Report at 2).  The correct identifier for the procedure at issue, the microfracture chondroplasty, is 29879.  (*See* Aug. 23, 2021 MedReview Report at 2; Def.'s Mot. at 10).

chondroplasty of the left knee")).  As such, the Fund refused to make any payment for that procedure.  (Def.'s 56.1 Stmt. ¶ 14).[4]  On September 28, 2021 and again on December 15, 2021, AA Medical appealed the Fund's findings but the Fund's position did not change.[5]  (Pl.'s Counterstatement of Material Facts ("Pl.'s 56.1 Counterstatement"), Dkt. No. 77 ¶¶ 10–11; Sep. 28, 2021 Appeal, attached to Teresh Aff. as Ex. F; Dec. 15, 2021 Appeal, attached to Teresh Aff. as Ex. G).  AA Medical alleges that the procedure was medically necessary based on "intraoperative findings" that revealed "a lesion not detected by the preoperative MRI."  (Pl.'s 56.1 Counterstatement ¶ 14 (citing Report of Operation; Decl. of Dr. Vedant Vaksha ("Vaksha Decl."), attached to Teresh Aff. as Ex. D)).[6]

AA Medical commenced this action on March 8, 2022, bringing a single claim for failure to abide by the terms of a plan under ERISA § 502(a)(1)(B).  (Compl., Dkt. No. 1 ¶¶ 31–35).  On August 11, 2022, the Fund filed a motion to dismiss.  (Def.'s Mot. to

---

[4] The SPD defines "medically necessary treatment" as treatments that are: "[c]onsistent with symptoms or diagnosis and treatment of the patient's condition, illness or injury," "[i]n accordance with standards of good medical practice," "[n]ot solely for the convenience of the patient, the physician or other provider," "[n]ot primarily custodial," and "[t]he most appropriate level of service that can be safely provided to the patient."  (SPD at 75).

[5] In its Amended Complaint, AA Medical alleges that it exhausted its administrative remedies, given that it never received a response to its appeals.  (Am. Compl. dated Jan. 24, 2023, Dkt. No. 24 ¶¶ 28–29, 32).  The Fund does not acknowledge this allegation, providing no evidence to the contrary, nor arguing that there has been any failure to exhaust administrative remedies.

[6] Though AA Medical cites to these documents and makes this assertion, the Court's review found no indication that surgery revealed something not present in the MRI findings.

Dismiss, Dkt. No. 18).  On January 18, 2023, the Honorable Eric N. Vitaliano[7] granted

the motion without prejudice and with leave to amend.  (Mem. & Order, Dkt. No. 23 at

8).  AA Medical filed an Amended Complaint on January 24, 2023, alleging the same

ERISA claim.  (Am. Compl., Dkt. No. 24 ¶¶ 39–43).  The parties completed briefing on

the Fund's motion for summary judgment on August 8, 2025.

DISCUSSION

Under ERISA § 502(a)(1)(B), a participant may bring a civil action to "recover

benefits due" under the terms of a qualifying plan.  29 U.S.C. § 1132(a)(1)(B).  Here, AA

Medical, as the Patient's assignee, seeks to enforce its right to benefits under the Plan,

arguing that the Fund acted contrary to its terms in (1) underpaying for procedure

29883, and (2) denying recovery for procedure 29879.

## I.      Standard of Review

"In an ERISA § 502(a)(1)(B) action, if the relevant plan 'vest[s] interpretive

discretion in the plan administrator,' the plan administrator's benefits decision will be

upheld 'unless it is arbitrary and capricious.'"  *Grosso v. AT&T Pension Benefit Plan*, No.

22-1701, 2024 WL 2180316, at *3 (2d Cir. May 15, 2024) (quoting *Roganti v. Metro. Life Ins.

Co.*, 786 F.3d 201, 204 (2d Cir. 2015)).  Under that standard, a court will uphold a plan

administrator's decision unless "it is found to be without reason, unsupported by

substantial evidence or erroneous as a matter of law."  *Id.* (quoting *Ocampo v. Bldg. Serv.

32B-J Pension Fund*, 787 F.3d 683, 690 (2d Cir. 2015)).  Substantial evidence in turn is

---

[7] The case was transferred from the Honorable Eric N. Vitaliano to the undersigned on January 7, 2025.

9

"such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the administrator and requires more than a scintilla but less than a preponderance." *Durakovic v. Bldg. Serv. 32 BJ Pension Fund*, 609 F.3d 133, 141 (2d Cir. 2010) (quotation omitted).

Here, it is undisputed that the Fund vested its Administrator and other employees with discretionary authority to interpret the Plan and make eligibility determinations. (*See* SPD at 80 ("The Plan Administrator . . . will have discretionary authority to . . . determine eligibility and entitlement to Plan Benefits in accordance with the terms of the Plan."); *id*. at 127 ("Any interpretation or determination under [the Administrator and other designees'] discretionary authority will be given full force and effect[.]")). Other courts have held that similar language provides for arbitrary and capricious review. *See, e.g.*, *Halberg*, 408 F. Supp. 3d at 137–38 (using arbitrary and capricious standard where administrator had "exclusive discretion and authority to determine on the Plan's behalf, whether a treatment, supply or service is a Covered Health Service" (emphasis omitted)); *Wegmann v. Young Adult Inst., Inc.*, No. 15-CV-3815, 2018 WL 3910820, at *8 (S.D.N.Y. Aug. 14, 2018) (applying arbitrary and capricious standard where plan granted administrator power to "determine the amount of benefits which shall be payable").

AA Medical does not dispute that this is the relevant standard. (Pl.'s Mem. in Opp'n to Def.'s Mot. dated June 27, 2025 ("Pl.'s Opp'n"), Dkt. No. 76 at 4, 7). Under this highly deferential standard of review, the Court concludes that the Fund's denial of AA Medical's full claim was not arbitrary and capricious.

10

**II.      Method for Reimbursement**

The Fund argues that it is entitled to summary judgment because its decision to pay $ 3,473.22 for the pre-approved procedure was neither arbitrary nor capricious, but rather a rational application of the Plan's terms.  (Def.'s Mot. at 9).

In laying out the procedure for calculating coverage for out-of-network providers, the Fund states that it will pay 60% of the Plan's "allowed amount charges" of a covered medical expense.  (*Id.* at 3; SPD at 76).  The Fund Administrator, Brian Sabbagh, testified that the Fund relied on the FAIR Health schedule of allowances in determining the allowed amount for the 29883 procedure, (Sabbagh Aff. ¶ 9), and then paid AA Medical 60% of the allowance as specified under the Plan's terms, (SPD at 76). There is no indication that the decision to rely on the FAIR Health schedule of allowances is without reason, or itself an arbitrary and capricious decision.  AA Medical's arguments about other components of the decision are unpersuasive.

First, AA Medical contends that the claim determination was not based on a rational application of the Plan's actual terms.  (Pl.'s Opp'n at 4).  But in doing so, AA Medical offers no more than conclusory assertions with no citation to authority.  It argues that the determination was unreasonable because the amount paid was just 2% of the total amount billed.  (*Id.* at 5).  But just because AA Medical was paid less than what it expected or charged, does not render the decision arbitrary or capricious.[8]  The

---

[8] The Fund also argues that the determination of the benefits coverage was reasonable given that the amount billed for the procedure was five times the allowable rate paid at the 100th percentile.  (Def.'s Mot. at 9; *see* FAIR Health Schedule of Allowances, attached to Sabbagh Aff. as Ex. F).

Plan makes clear it "will not always pay benefits equal to or based on the provider's actual charge for health care services or supplies" because the Plan "covers only the 'Allowed Charge' amount" for such services.  (SPD at 117).  *See Pro. Orthopaedic Assocs., PA v. 1199SEIU Nat'l Benefit Fund*, 697 F. App'x 39, 41 (2d Cir. 2017) (affirming the district court's dismissal of the plaintiff's ERISA § 502(a)(1)(B) claim for full payment where the complaint failed "to identify any provision in the plan documents requiring the [defendant] to pay such rates"); *e.g., Atl. Spinal Care v. Aetna*, No. 12-CV-6759, 2014 WL 1293246, at *9–*10 (D.N.J. Mar. 31, 2014) (finding no abuse of discretion where the defendant paid pursuant to terms for out-of-network providers and noting reimbursement "need not be what the out-of-network provider has billed for the service"); *Shah v. Blue Cross Blue Shield of Mich.*, No. 17-CV-0711, 2018 WL 2148866, at *1, *7–*8 (D.N.J. May 10, 2018) (finding no abuse of discretion when reimbursement, paying $ 7,106.44 of the $ 238,310.00 requested, was made pursuant to plan terms).

Second, AA Medical argues that the SPD is ambiguous and fails to disclose any specific, objective methodology to calculate reimbursement amounts.  (Pl.'s Mot. at 4).  However, AA Medical again makes conclusory assertions without legal support for its positions.  To the extent AA Medical argues that reliance on the FAIR Health schedule was arbitrary and capricious because the SPD does not provide details about its application, (Pl.'s Opp'n at 6), nothing requires such details in an SPD, *see Tocker v. Philip Morris Cos., Inc.*, 470 F.3d 481, 488 (2d Cir. 2006) ("[T]he summary plan description is intended to be a summary, not a full recitation of the terms of the plan, and we do not expect that SPDs will anticipate every possible idiosyncratic contingency

12

that might affect a particular participant's eligibility for benefits." (quotation omitted)).

Their omission cannot make the Fund's decision arbitrary and capricious.  *E.g.*, *Krauss v. Oxford Health Plans, Inc.*, 418 F. Supp. 2d 416, 429 (S.D.N.Y. 2005) (finding the defendant's under-reimbursement for a procedure based on the plan's schedule was neither arbitrary nor capricious, even if the schedule and method of calculation were not disclosed in the plan as "ERISA does not mandate such disclosure in Plan documents"), *aff'd*, 517 F.3d 614 (2d Cir. 2008).  As such, the Fund's denial of full reimbursement based on its schedule was neither arbitrary nor capricious.[9]

## III.    Medical Necessity

The Plan grants the Administrator discretion to determine if a medical service was "medically necessary," based on criteria including, among others, whether the designee determines the procedure to be "consistent with the symptoms or diagnosis

---

[9] AA Medical also makes conclusory and passing mentions about the Fund's failure to respond to AA Medical's appeals.  (Pl.'s Opp'n at 1–2, 9).  But AA Medical does not provide further argument for these assertions and does not tether them to any ERISA provision, let alone to a claim for benefits due.  The cursory references to the Fund's failure to provide or respond to an appeal is not a basis to deny summary judgment (for example, none of the relevant ERISA regulations governing appeals processes are cited in AA Medical's brief).  And AA Medical does not contend that a different standard of review should apply because of the failure to comply with the appeal regulations.  *See Halo v. Yale Health Plan, Dir. of Benefits & Recs. Yale Univ.*, 819 F.3d 42, 56 (2d Cir. 2016) ("In other words, if plans comply with the regulation, which is designed to protect employees, the plans get the benefit of both an exhaustion requirement and a deferential standard of review when a claimant files suit in federal court—protections that will likely encourage employers to continue to voluntarily provide employee benefits.  But if plans do not comply with the regulation, they are not entitled to these protections.").  Ultimately, AA Medical fails to cite any authority to suggest failure to comply with the appeals process requires a conclusion that the Fund's decision was arbitrary and capricious—as opposed to some other form of limited relief, like waiver of an exhaustion requirement or tolling of the limitations period, which are not relevant here.

and treatment of an illness or injury" and "necessary in terms of generally accepted American medical . . . standards."  (SPD at 122–23).  Here, relying on the MedReview consultant's report, the Fund exercised its discretion to find that the procedure was not medically necessary.  The consultant concluded that AA Medical's "supplied records d[id] not support performing a microfracture chondroplasty of the left knee."  (Aug. 23, 2021 MedReview Report at 2).  The Fund seeks summary judgment for any claim based on the denial of payment for this procedure.  (Def.'s Mot. at 10).

AA Medical argues that there is an issue of fact as to the necessity of procedure 29879.[10]  (Pl.'s Opp'n at 1, 7–8).  But AA Medical misconstrues the issue before the Court.  The question is not whether the Fund made the "correct" decision in finding the procedure not medically necessary, but rather whether the Fund had a "reasonable basis for the decision that it made."  *Hobson v. Metro. Life Ins. Co.*, 574 F.3d 75, 89 (2d Cir. 2009) (quotation omitted).

In support of its position—and in an attempt to create an issue of fact—AA Medical offers a declaration from its surgeon, Dr. Vaksha, who contends that the

---

[10] AA Medical also makes passing reference to the fiduciary duty of an ERISA plan administrator along with its general allegations that the Fund was not acting in accordance with the Plan.  (Pl.'s Mot. at 7 (citing 29 U.S.C. § 1104(a)(1) (requiring that fiduciaries act "solely in the interest of the participants and beneficiaries"))).  But AA Medical did not raise a separate claim for breach of fiduciary duty.  *See Coram Healthcare Corp. v. Cigna*, No. 00-CV-2677, 2002 WL 32910044, at *11 (S.D.N.Y. July 24, 2002) (rejecting plaintiff's attempt to raise a breach of fiduciary duty claim in its summary judgment briefing where no such claim was alleged in the complaint).  And such a claim would run directly from AA Medical's claim for denial of benefits.  *See Spillane v. N.Y.C. Dist. Council of Carpenters*, No. 23-0247, 2024 WL 221816, at *3 (2d Cir. Jan. 22, 2024) ("[C]ourts in this Circuit have repeatedly rejected attempts to repackage claims for wrongful denial of benefits under Section 502(a)(1) as claims for breaches of fiduciary duties under Section 502(a)(3)." (quotation omitted)).

Patient's injuries required the microfracture chondroplasty.  (Pl.'s Opp'n at 8).

Dr. Vaksha opines that the Fund's medical consultant's conclusion, finding the

procedure unnecessary, was based on a flawed medical opinion.  (Vaksha Decl. ¶¶ 5–6).

Dr. Vaksha's opinion—which was not presented to the Administrator and thus is

outside the record, *see Halo*, 819 F.3d at 60—does not render the Fund's determination

arbitrary and capricious.

AA Medical's medical opinion contends the procedure was a means of avoiding

a more complicated or dangerous procedure later.  (Vaksha Decl. ¶¶ 5–8).  That is a far

cry from suggesting that a decision to not perform it would have been an unreasonable

medical decision.  But in any event, offering a contrary medical opinion—even from a

treating doctor—is not enough to show that the later benefits determination was

arbitrary and capricious.[11]  *See Roganti*, 786 F.3d at 212 ("[T]he mere fact of conflicting

evidence does not render the administrator's conclusion arbitrary and capricious.");

*Mayer v. Ringler Assocs. Inc.*, 9 F.4th 78, 89 (2d Cir. 2021) ("[Courts] may not deem a final

benefits determination to be arbitrary and capricious merely because the record

contains evidence supporting an alternative determination."); *Johnson v. Hartford Life &*

*Accident Ins. Co.*, No. 23-1140, 2025 WL 573687, at *2 (2d Cir. Feb. 21, 2025) ("Indeed,

courts have no warrant to require administrators automatically to accord special weight

to the opinions of a claimant's physician." (quoting *Black & Decker Disability Plan v.*

*Nord*, 538 U.S. 822, 834 (2003))).

---

[11] AA Medical's argument that the Fund abused its discretion in failing to find the procedure experimental is of no moment, since the Plan does not require such a finding to deny a claim.

15

The Fund's consultant reviewed Dr. Vaksha's office notes, the operative report, and the pre-procedure MRI to determine that the procedure was not medically necessary.  (Aug. 23, 2021 MedReview Report at 1–2).  That determination was not legal error, nor was it an unreasoned or conclusory determination, and it was supported by substantial evidence.[12]  And, therefore, the Fund is entitled to summary judgment.  *E.g.*, *S.M. v. Oxford Health Plans (N.Y.)*, 644 F. App'x 81, 84 (2d Cir. 2016) (affirming summary judgment for plan administrator where medical necessity determination was supported by substantial evidence).

CONCLUSION

For the reasons explained above, the Fund's motion is granted and AA Medical's claim is dismissed with prejudice.  The Clerk of Court is directed to close this case.

SO ORDERED.

*/s/ Sanket J. Bulsara*
SANKET J. BULSARA
United States District Judge

Date:   March 26, 2026
        Central Islip, New York

---

[12] AA Medical misconstrues the consultant's conclusion in arguing that it was unfounded.  The Fund's expert did not base its opinion on the fact that "no lesion existed," as AA Medical states, (Pl.'s Opp'n at 9); rather, it specifically found that no lesion existed that *necessitated* the procedure provided, (Aug. 23, 2021 MedReview Report at 2).  Indeed, AA Medical's surgeon agrees with the Fund's consultant on that point.  (*See* Vaksha Decl. ¶ 6 ("Microfracture chondroplasty was not done for any particular articular cartilage lesion . . . but for the sole purpose of allowing an early healing of the meniscus repair[.]")).